**Peter H. IRONS, Plaintiff,**

v.

**Edward H. LEVI et al., Defendants.**

**Civ. A. No. 76–963–S.**

United States District Court,
D. Massachusetts.

May 26, 1978.

---

Peter H. Irons, pro se.

Barbara Allen Babcock, Asst. Atty. Gen., Edward F. Harrington, U. S. Atty., William Brown, Asst. U. S. Atty., Boston, Mass., Lynne K. Zusman and Mark J. Kurzmann, Attys., Dept. of Justice, Charles Mathews, III, Office of Legal Counsel, F. B. I., Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

Plaintiff brought this action under the Freedom of Information Act (hereinafter "FOIA"), 5 U.S.C. § 552 *et seq.*, seeking a court order directing the Federal Bureau of Investigation (hereinafter "FBI") to release all materials in its possession relating to the plaintiff. Although numerous documents have been released to plaintiff, defendant has withheld some documents and parts of documents as exempt from disclosure under 5 U.S.C. § 552(b).[1]

Plaintiff is the main subject of FBI files maintained on a Selective Service violation and his application for a Presidential Pardon. These have been furnished. Plaintiff is also mentioned in other FBI files maintained on organizations and individuals other than himself ("see reference" files). The controversy between the parties is now narrowed to the latter files.

The matter is before me on cross-motions for summary judgment and plaintiff's motion for *in camera* inspection of records.

## I. RESPONSIVENESS OF DEFENDANT'S SEARCH

By letter dated April 4, 1974, plaintiff requested

[a]ll records, reports, notes, memoranda, photographs and any and all materials prepared by, received by, or otherwise in possession of the Federal Bureau of Investigation, relating to Peter Hanlon Irons. Included in this request is oral materials compiled by surveillance, interception of all communications by any device, photographs, reports of informants, material gathered from the public media, material gathered as part of the COINTELPRO operation, and any other material in files relating to Peter Hanlon Irons.

The FBI's response to plaintiff's search request, as described in the Third Loome Affidavit at 6, entailed locating the two investigative files of which plaintiff was the subject as well as locating "see reference" cards, i. e., incidental references to plaintiff in documents whose primary focus was not on plaintiff. However, only a portion of the documents returned by the "see reference" cards were considered to be within plaintiff's request.

Because these documents reflected investigation concerning other organizations and individuals, the records of which have not been requested by plaintiff, only those portions of these documents which pertained to plaintiff were processed pursuant to the FOIA and released. As stated in the Hanigan Affidavit at page 9, "Much of the material contained in such a document does not concern the plaintiff and was, therefore, excluded, as being outside the scope of his request." Third Loome Affidavit at 6.

Plaintiff argues that defendant's search was not fully responsive to his FOIA request. "[P]laintiff seeks access to all material in the records which reflects the FBI's purpose, scope and conclusions about its investigations of his political activities and the organizations with which he was affiliated, through which he attempted to express his First Amendment rights." Plaintiff's Memorandum at 21.

 The FOIA requires production of all records "reasonably described" by the request. 5 U.S.C. § 552(a)(3). Plaintiff's present demand for materials pertaining to the organization to which he was affiliated which do not focus on plaintiff's personal involvement, seeks matter not reasonably described in plaintiff's original request. He may not expand his request at this point.

---

1. According to the Third Loome Affidavit at 10, of the 103 "Documents" located pursuant to plaintiff's search request, 320 pages were found to pertain to plaintiff and 270 of these pages were released. According to plaintiff's Memorandum at 9, 194 pages were released with deletions. Putting plaintiff's Memorandum at 8 together with the Third Loome Affidavit at 6, it appears that the FBI has asserted approximately 149 statutory claims of exemption. These break down to approximately two claims under b(1), 61 under b(2), 59 under b(7)(C), 25 under b(7)(D) and two under b(7)(E). The claims of exemption under b(2) are being reprocessed by the FBI and are not at issue here.

*Fonda v. Central Intelligence Agency*, 434 F.Supp. 498, 501 (D.D.C., 1977).

■ Defendant produced some documents which had everything excised but plaintiff's name and address, or plaintiff's name and some additional identification of the document. Plaintiff is entitled under his request to be informed of the context in which his name is recorded. The Fifth Loome Affidavit clarified the documents which contained only plaintiff's name and address, but there still remain documents partially released to the plaintiff in which the context remains unclear. For instance, the 5/27/64 Airtel from the Philadelphia FBI office attached to the Fourth Loome Affidavit indicates that it pertains to the May 2 Committee. Plaintiff's name appears out of context, however, and he cannot know whether he is listed as a speaker, officer, or casual hanger-on. It may be that the document does not reveal plaintiff's relationship to the organization, but plaintiff should be informed of that as well. Defendant is ordered to furnish an explanatory affidavit with respect to the documents listed on Appendix A hereto within 30 days of this order.

## II. b(1) EXEMPTION

The FBI has withheld two documents under assertions of the b(1) exemption which authorizes nondisclosure of records which are

(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified . . . . 5 U.S.C. § 552(b)(1).

■ Defendant's assertion of the b(1) exemption for the Cincinnati field office letter of June 28, 1962 falls within the parameters of *Bell v. United States*, 563 F.2d 484 (1st Cir. 1977). Defendant has supported its claim by the affidavit of Special Agent Stewart, who is currently assigned to the Document Classification Review Unit of the Records Management Division of FBI headquarters. The affidavit states that Stewart made a paragraph by paragraph determina-

tion that the document was properly classified as confidential pursuant to EO 11652. He stated that it had been exempted from automatic declassification under category 2 of EO 11652, Section 5(B), which exempts from automatic declassification, "Classified information or material specifically covered by statute, or pertaining to cryptography, or disclosing intelligence sources or methods." Stewart described the document in question as containing information provided by a confidential source who is still in a position to provide significant information on activities presenting a serious threat to national security. Stewart stated that the information would itself identify the source. The affidavit thus "demonstrates by its sufficient description [that] the contested document logically falls into the category of exemption indicated." *Bell v. United States, supra* at 487. There is no need for the court to make further inquiry into the national security interest threatened by this document in the absence of a showing of bad faith. Accordingly, plaintiff's motion for *in camera* review of the June 28, 1962 letter from the Cincinnati FBI is DENIED, and defendant's motion for summary judgment as to this document is ALLOWED.

■ The description of the May 27, 1964 Airtel and letterhead memorandum from the Philadelphia FBI field office is insufficient to demonstrate that "the contested document logically falls into the category of the exemption indicated." *Bell v. United States, supra* at 487. The Stewart Affidavit and the Fourth Loome Affidavit assert that the classified materials, which are claimed to encompass the only part of the document deemed responsive to plaintiff's FOIA request, originated in the U. S. Army, which requested their continued classification. Special Agent Stewart states that he personally reviewed the document and concluded it was properly classified under category 2 of EO 11652, Section 5(B), but the basis for this conclusion is not revealed. Notwithstanding the dangers inherent in judicial involvement in questions of national security, *in camera* review of this single document appears to be the prac-

tical solution to the impasse. The document will be furnished to me in a sealed envelope for such examination forthwith. Plaintiff's motion for *in camera* review is otherwise DENIED.

## III. INVESTIGATORY RECORDS COMPILED FOR LAW ENFORCEMENT PURPOSES

■ Plaintiff challenges defendant's assertions of the b(7)(D) exemption on the ground that the records from which information was withheld under this exemption do not constitute "investigatory records compiled for law enforcement purposes."[2] Defendant need not meet the further b(7)(D) test of records compiled in the course of a criminal or lawful national security investigation because defendants claim to have used the b(7)(D) exemption only to withhold information that would tend to reveal the identity of a confidential source. Third Loome Affidavit at 7.

The laws the FBI sought to enforce by means of the files retrieved pursuant to plaintiff's request are the various internal security statutes and executive orders.[3]

■ The files claimed to be covered by the b(7)(D) exemption are described in the affidavit of Special Agent Paul E. Nugent, which is annexed hereto as Appendix B. I am of the opinion that all the files referred to except (P) are routine monitoring of various activities, *see Center for National Policy Review On Race And Urban Issues v. Weinberger*, 163 U.S.App.D.C. 368, 502 F.2d 370 (1974). *Cf. National Public Radio v. Bell*, 431 F.Supp. 509, 513 n. 12 (D.D.C., 1977). File (P) was an investigation of a specific conscientious objector and undoubtedly was entitled to the b(7)(D) exemption at the time that the investigation was active, starting in 1964. All that appears in it is that plaintiff attended a demonstration on October 30, 1964. All of these matters, including File (P), deal with matter which occurred between twelve and sixteen years ago. As to File (P), however, defendant has already released all the pertinent information.

Accordingly, plaintiff's motion for summary judgment is ALLOWED with respect to all the information concerning him in the files referred to in the Nugent Affidavit, except File (P), and the defendants are ordered to furnish the same forthwith.

There remains only the decision as to the May 27, 1964 memorandum, which is to be submitted to me. Upon resolution of that issue, the foregoing orders will be embodied in a final judgment.

---

2. The FBI also asserts exemptions under b(7)(C) and b(7)(E). Plaintiff does not challenge the defendant's assertion of b(7)(E). Plaintiff does not contest defendant's assertions of the b(7)(C) exemption "as long as they are strictly limited to names and personal identifying data . . . ." Plaintiff's Memorandum at 27. Defendant stated that "utilization of the b(7)(C) exemption was strictly limited to names and personal identifying data of individuals other than the plaintiff". Third Loome Affidavit at 7. Thus, there is no discrepancy between the plaintiff's limited concession and defendant's asserted use of the exemption. Since the mere possibility that government affidavits claiming exemptions will be untruthful is not enough to trigger *in camera* review, *Weissman v. Central Intelligence Agency*, 565 F.2d 692, 697 (D.C.Cir. 1977), there remains no contest as to defendant's assertion of the b(7)(C) exemption.

Defendant asserts that the information it withheld under b(7)(D) was equally protected under b(7)(C) because of the significant privacy interests involved in safeguarding the identities of confidential sources. Third Loome Affidavit at 7. However, the FBI claims to have used b(7)(D) to withhold "confidential information which would *tend to identify* the confidential source who supplied same." Third Loome Affidavit at 7 (emphasis supplied). Since information tending to identify goes beyond the scope of the withholding of names and identifying data to which plaintiff has agreed, there remains a dispute as to the government's assertion of the b(7)(D) exemption.

3. The applicable laws include the Internal Security Act of 1950, 50 U.S.C. § 781, *et seq.*; the Foreign Agents Registration Act of 1938, 18 U.S.C. § 951; the Smith Act of 1940, 18 U.S.C. § 2385; the Selective Service Act, 50 U.S.C. App. § 462; the Subversive Activities Control Act of 1950; 22 U.S.C. § 611, *et seq.*, the Extortion Statute, 18 U.S.C. §§ 873–877; and Executive Order 10450. Nugent Affidavit at 3–4.

## APPENDIX A

| File | Serial | Date | Where described |
|------|--------|------|-----------------|
| 105–4899 Phila. F.O. | | 11/26/63 | 2d Loome Affidavit, Exh. H at 19 |
| Letterhead Memorandum to FBI Director | | | |
| 100–39876 W.F.O. | 17 | 3/23/62 | 2d Loome Affidavit, Exh. H at 24 |
| Memorandum to W.F.O. | | | |
| 100–43693 W.F.O. | 1 | 8/21/64 | 2d Loome Affidavit, Exh. H at 36 |
| Airtel to FBI Director | | | |
| 100–43420 W.F.O. | 2 | 5/27/64 | 4th Loome Affidavit, Exh. B at 2 |
| Airtel to FBI Director | | | |
| 100–44434 | 336 | | 2d Loome Affidavit, Exh. H at 47 5th Loome Affidavit at 28 |

List of Names
(Clarify why plaintiff's name listed twice)

---

## APPENDIX B

### AFFIDAVIT

I, Paul E. Nugent, being duly sworn, depose and say as follows:

(1) I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI), assigned in a supervisory capacity to the Domestic Security—Terrorism Section of the Criminal Investigative Division of the FBI, at FBI Headquarters (FBIHQ), Washington, D. C. I have served as an SA of the FBI for 27 years, and have had direct responsibility for the investigation or supervision of those matters generally referred to as "internal security" investigations, the nature of which is the same as those documents discussed herein, for approximately four years.

(2) I have personally reviewed those records discussed herein and have personal knowledge of the contents thereof.

### PURPOSE OF AFFIDAVIT

(3) This affidavit is submitted to address those law enforcement purposes which are the bases for the investigations which caused the creation of those records retrieved pursuant to plaintiff's Freedom of Information Act (FOIA) request. Only those records in which plaintiff was incidentally mentioned (thus retrievable under plaintiff's name only through the use of "see" reference index cards) will be discussed herein.

While plaintiff's characterization of the records to be discussed herein as "plaintiff's political activities" records is inaccurate, by close scrutiny of his "Memorandum in Support of Motion for *In Camera* Inspection of Records and for Summary Judgment" (hereinafter Plaintiff's Memorandum) dated July 20, 1977, and the records retrieved in this matter, I have determined which records plaintiff considers "political."

All of the records discussed in paragraph (6) below, pertain to lawful investigations conducted by the FBI of certain organizations and individuals other than the plaintiff to determine if violations of Federal law existed and to discharge the FBI's responsibilities pursuant to Executive Order (EO) 10450. At no time was the plaintiff the subject of those investigative matters which he characterizes as "political activities." However, portions of these records

which were compiled on other subjects refer incidentally to plaintiff, and therefore, these specific portions are deemed pertinent to his FOIA request.

## LAW ENFORCEMENT PURPOSES

(4) In order to demonstrate what "law enforcement purposes" existed at the time that the information pertaining to the plaintiff was compiled by the FBI, this affidavit will set forth:

(1) the applicable Federal Statutes and EOs in existence when these investigations took place; and,

(2) a review of each pertinent file and a discussion of the specific purpose of each investigation.

The majority of those records pertinent to plaintiff's FOIA request and as discussed in depth at paragraph (6) below, are generally characterized by the FBI as "internal security" investigations. These "internal security" investigations were conducted to determine the extent of Communist control or infiltration of certain organizations and to determine if one or more Federal laws had been violated.

Certain other of these files are what are characterized within the FBI as "control files," and while they contain investigatory records compiled for law enforcement purposes, they are maintained to administratively assist in various investigations. "Control files" are separate files established for the purpose of administering specific phases of an investigative matter or program.

## FEDERAL STATUTES AND EXECUTIVE ORDER

(5) Those Federal laws and the EO which constituted the "law enforcement purpose" for the various investigations pertinent to plaintiff's FOIA request and as discussed at paragraph (4) below, are attached hereto as Exhibits as follows:

| STATUTE OR EO | EXHIBIT NUMBER | |
|---|---|---|
| Internal Security Act of 1950 50, U.S.C. 781, et seq. | 1 | Defines and requires registration of Communist front organizations; allows the emergency detention of suspected security risks, and establishes penalties for membership in the Communist Party or Communist-action organizations. |
| Foreign Agents Registration Act of 1938 18, U.S.C. 951 | 2 | Prohibits acting as an agent of a foreign government without prior registration with the Secretary of State. |
| Smith Act of 1940 18, U.S.C. 2385 | 3 | Prohibits advocating by force or violence, the overthrow of the Government. |
| Selective Service Act 50, U.S.C. (app.) 462 | 4 | Establishes certain regulations concerning compliance with the Selective Service Act including prohibiting false registration and counseling another to refuse or evade registration. |
| Subversive Activities Control Act of 1950 22, U.S.C. 611, et seq. | 5 | Sets forth specifics concerning the registration of foreign agents and requires that foreign political propaganda be provided to the Government. |
| Extortion 18, U.S.C. 873–877 | 6 | Prohibits the posting of a letter which threatens injury to any person. |
| Executive Order 10450 | 7 | Establishes regulations concerning employment with the Government including prohibiting a Governmental employee from membership in or association with an organization which is Communist, Fascist, totalitarian, or subversive. |

While the purpose of the investigations described at paragraph (6) below, was at the outset of the investigation an effort by the FBI to discharge its responsibilities pursuant to one or more of the Federal laws

and EO listed above, very often other statutory purposes were acquired during the course of the investigation. As during the course of many investigations, information was received in some of the pertinent investigations which indicated that a violation of Federal law may exist other than that possible violation which initiated the investigation. This is also true where the investigation was initiated pursuant to EO 10450.

As stated in paragraph (4) above, some of the investigatory records discussed at paragraph (6) below, are characterized by the FBI as "control files." While the collection of records maintained within some "control files" may not have been precipitated by a violation of a specific Federal law or to discharge the FBI's responsibilities pursuant to EO 10450, the maintenance of these "control files" are absolutely necessary in the administration of the FBI's investigative duties. They enable the FBI, among other things, to determine trends in criminal activity, to be prepared for possible violations of Federal law arising at a later date, to have readily retrievable a depository for instructions and miscellaneous information concerning various Federal. laws, and to, in general, better administrate specific investigatory matters.

## REVIEW OF INDIVIDUAL INVESTIGATORY RECORDS

(6) Each investigative matter of which the plaintiff in his Memorandum of July 20, 1977, took issue with the "law enforcement purpose" thereof, was reviewed by me to locate documentation within those files of the direction or "purpose" of the investigation. This "purpose," along with other information pertaining to the pertinent investigations, is set out below:

(A) *TITLE OF INVESTIGATION*: "Union for National Draft Opposition; Interfe.·ence and Hinderance of Operation of Selective Service System; Selective Service Act."

*FBIHQ FILE NUMBER*: 25–612694

*BOSTON FIELD OFFICE FILE NUMBER*: 25–28133

*DOCUMENTATION OF PURPOSE*: On May 13, 1970, FBIHQ advised a field office of the FBI that information had been received at FBIHQ concerning captioned organization and instructed the field office that ". . . the activities of this organization should be followed so that your office can be aware of any actions that might possibly be construed as a violation of the Selective Service Act."

On June 4, 1970, the Assistant Attorney General of the Criminal Division, United States Department of Justice (USDOJ), advised the Director of the FBI, in reference to the Union for National Draft Opposition (UNDO), that, "It is requested that the Bureau conduct an investigation to determine the facts concerning any activity involving supererogatory and nugatory registrations by women with the Selective Service System, and any activity involving mass filing of spurious conscientious objector claims, with a view to possible prosecution under 50, U.S.C. (app.) 462(a) for knowingly hindering or interfering (or attempting to do so) with the administration of the Military Selective Service Act or for conspiring to do any of such acts."

On August 24, 1970, under the abbreviated title "Union for National Draft Opposition (UNDO); SSA," the Newark Field Office of the FBI submitted a memorandum to FBIHQ which contained two paragraphs pertaining to plaintiff.

*PREVIOUS DESCRIPTION OF PERTINENT DOCUMENTS*: Affidavit of SA Michael L. Hanigan, June 16, 1976 (hereinafter Hanigan Affidavit), page 16, paragraph 45; Second Affidavit of SA John F. Loome, Jr., May 5, 1977 (hereinafter Second Loome Affidavit), Exhibit H, pages two, three and four.

(B) *TITLE OF INVESTIGATION*: "House Committee on UnAmerican Activities—Information Concerning."

*FBIHQ FILE NUMBER*: 61–7582

*DOCUMENTATION OF PURPOSE*: This file, which was created in May of 1938, was utilized to contain committee reports,

newspaper articles, correspondence and other miscellaneous information concerning the Dies Committee, which subsequently became known as the House Committee on UnAmerican Activities (HUAC) of the United States Congress.

A file of this type is commonly referred to in the FBI as a "control file;" "control files" being separate files established for the purpose of administering specific phases of an investigative matter or program.

Plaintiff's name appeared on one page of a HUAC meeting transcript which was released to plaintiff in its entirety with the exception of certain administrative markings.

*PREVIOUS DESCRIPTION OF PERTINENT DOCUMENT*: Hanigan Affidavit, page 16, paragraph 46.

(C) *TITLE OF INVESTIGATION*: "Student March on Washington, April 17, 1965, Information Concerning–IS (Internal Security)."

*FBIHQ FILE NUMBER*: 62–110048

*DOCUMENTATION OF PURPOSE*: FBIHQ had received information that a demonstration by individuals throughout the country was to take place at Washington, D. C., on April 17, 1965, and that various subversive groups planned to participate in this demonstration. On March 17, 1965, FBIHQ advised all FBI Field Offices that, "It is the responsibility of the Bureau to identify all subversive groups and individuals with subversive backgrounds who plan to participate in this demonstration, and to follow and report the participation of these groups and individuals in the demonstration. Particular emphasis should be placed on the development of information which indicates the degree of influence, domination, or control of the march by subversive elements . . ."

These instructions are consistent with the development of information necessary to fulfill the FBI's responsibilities pursuant to EO 10450. Furthermore, influence of this nature could also indicate the possibility of a violation of the Internal Security Act of 1950.

Information was subsequently received by FBIHQ from various FBI Field Offices that the march was, in part, being sponsored and promoted by Communist-controlled organizations, and that some individuals were planning on participating in "civil disobedience." This information was provided the Attorney General of the United States on April 15, 1965. The document containing that information pertinent . to the plaintiff was created on May 4, 1965.

*PREVIOUS DESCRIPTION OF PERTINENT DOCUMENT*: Hanigan Affidavit, page 16, paragraph 47.

(D) *TITLE OF · INVESTIGATION*: "American Friends Service Committee–IS–C (Communist)." ·

*FBIHQ FILE NUMBER*: 100–11392

*PHILADELPHIA FILE NUMBER*: 105–4899

*DOCUMENTATION OF PURPOSE*: The file pertaining to the American Friends Service Committee (AFSC) was created in 1922 into which various correspondence and other miscellaneous material was placed until 1941. From 1941 to 1942, an Internal Security (IS) investigation was conducted due to the AFSC's pacifist stance during World War II.

In October, 1954, an IS Communist investigation was instituted to determine the extent, if any, of Communist infiltration into the AFSC.

On July 2, 1956, the Assistant Attorney General of the Internal Security Division, USDOJ, after a review of FBI reports pertaining to the AFSC, advised the Director of the FBI that "A review of investigative reports furnished by the Bureau concerning captioned organization indicates that . . there is not sufficient evidence at this time to justify the filing of a petition with the Subversive Activities Control Board to require it to register as a Communist Front organization under the Subversive Activities Control Act of 1950. The file on this organization will be reexamined as additional information is furnished relevant to

the applicable definition and criteria under the Act."

In February, 1957, active IS–C investigation pertaining to the AFSC was terminated, however, information from sources, correspondence, media publications and other miscellaneous material was still directed to the file.

The investigation conducted in this matter was initiated to determine if a violation of the Subversive Activities Control Act existed and the records were thereafter maintained consistent to fulfill the FBI's responsibilities pursuant to EO 10450 and the Federal Statutes listed in paragraph (5) above. All information pertaining to the plaintiff was recorded on November 26, 1963, and was released to him pursuant to his FOIA request.

*PREVIOUS DESCRIPTION OF PERTINENT DOCUMENTS*: Hanigan Affidavit, page 17, paragraph 48; Second Loome Affidavit, Exhibit H, page 19.

(E) *TITLE OF INVESTIGATION*: "Communist Infiltration of the Washington Committee for a Sane Nuclear Policy; IS–C."

*FBIHQ FILE NUMBER*: 100–429998

*WASHINGTON FIELD OFFICE FILE NUMBER*: 100–35631

*DOCUMENTATION OF PURPOSE*: Active investigation to determine the extent of Communist infiltration of the Washington Committee for a Sane Nuclear Policy (WCSNP) instituted on September 21, 1959, after information had been received at FBIHQ between that date and June 19, 1958, indicating Communist interest and participation in the WCSNP.

The initial report of this investigation, dated November 20, 1959, was by the FBI Field Office directing the investigation and stated, in part, "This investigation was predicated upon information that individuals identified in the past as Communist Party members have infiltrated captioned organization. Our investigation is directed solely toward establishing the extent and

the result of this infiltration. The Federal Bureau of Investigation is not investigating the legitimate activities of this organization . . . The CP has been designated by the Attorney General of the United States pursuant to Executive Order 10450."

This November 20, 1959, report was furnished the Assistant Attorney General of the IS Division, USDOJ, on December 3, 1959, with a cover letter which stated, in part, "The Internal Security Division may desire to review the contents of this and future reports submitted in captioned matter in connection with the provisions of the Internal Security Act of 1950."

The records in this matter were compiled to determine if a violation of the Internal Security Act of 1950 existed and to fulfill the FBI's responsibilities pursuant to EO 10450. The records pertaining to the plaintiff were created during 1962.

*PREVIOUS DESCRIPTION OF PERTINENT DOCUMENTS*: Hanigan Affidavit, page 17, paragraph 50; Second Loome Affidavit, Exhibit H, pages 23 and 25.

(F) *TITLE OF INVESTIGATION*: "Student Peace Union, IS–C."

*FBIHQ FILE NUMBER*: 100–434591

*WASHINGTON FIELD OFFICE FILE NUMBER*: 100–35189

*DOCUMENTATION OF PURPOSE*: On December 29, 1960, after receiving information concerning the activities of the Student Peace Union (SPU), FBIHQ advised an FBI Field Office " . . . to review its files and contact appropriate sources for information concerning the Student Peace Union and the identities of its officials to determine if an investigation is warranted." That FBI Field Office replied to FBIHQ stating that there is no indication of subversive activities at this time and recommended " . . . no investigation concerning this organization be undertaken at this time . . . "

No active investigation was conducted thereafter, however, this file continued to receive information from sources, correspondence, media publications and other miscellaneous information concerning the SPU.

On September 28, 1962, FBIHQ advised an FBI Field Office under the title "Student Peace Union, Information Concerning (Internal Security)" that office should be alert for any information indicating that the Communist Party or its members may attempt to infiltrate the SPU.

The investigation in this matter is consistent with that investigation necessary to fulfill the FBI's responsibilities pursuant to EO 10450 and the various Federal Statutes enumerated in paragraph (5) above. The records in this matter pertaining to the plaintiff were created in mid-1963.

*PREVIOUS DESCRIPTION OF PERTINENT DOCUMENTS*: Hanigan Affidavit, page 17, paragraph 51; Second Loome Affidavit, Exhibit H, pages 28 through 31.

(G) *TITLE OF INVESTIGATION*: "United States Festival Committee; (Eight World Youth Festival); IS–C."

*FBIHQ FILE NUMBER*: 100–436225

*DOCUMENTATION OF PURPOSE*: After information was received pertaining to the United States Festival Committee (USFC), on July 24, 1961, FBIHQ directed an FBI Field Office to determine the extent of Communist infiltration of this organization.

On May 28, 1962, FBIHQ advised certain FBI Field Offices that the attendance of the Youth Festival by certain individuals may constitute " . . . a violation of Section 6(a)(1) of the Internal Security Act of 1950."

The record pertaining to plaintiff in this matter was created on June 28, 1962.

*PREVIOUS DESCRIPTION OF PERTINENT DOCUMENT*: Hanigan Affidavit, page 17, paragraph 52.

(H) *TITLE OF INVESTIGATION*: "Cominfil (Communist Infiltration); Students for a Democratic Society (SDS); IS–C."

*FBIHQ FILE NUMBER*: 100–439048–Sub 10

*CINCINNATI FILE NUMBER*: 100–14444

*DOCUMENTATION OF PURPOSE*: This file was created at FBIHQ to record all documents submitted by the Cincinnati Field Office of the FBI pertaining to the investigation of the Communist infiltration of the organization known as the Students for a Democratic Society (SDS).

The May 23, 1966, report of the Cincinnati Field Office stated, in part, "This investigation was initiated to determine the extent of Communist Party (CP) infiltration and/or infiltration by other subversive groups in the Students for Democratic Society (SDS). This investigation is also being conducted to determine if the organization is a specific target for CP infiltration and/or infiltration by other subversive groups."

The investigation in this matter is consistent with that investigation necessary to fulfill the FBI's responsibilities pursuant to EO 10450 and the various Federal Statutes enumerated in paragraph (5) above. The record pertinent to plaintiff's FOIA request was created May 23, 1966.

*PREVIOUS DESCRIPTION OF PERTINENT DOCUMENTS*: Hanigan Affidavit, page 18, paragraph 53; Second Loome Affidavit, Exhibit H, page 14.

(I) *TITLE OF INVESTIGATION*: "May 2nd Committee, Internal Security–SWP; Registration Act; Sedition."

*FBIHQ FILE NUMBER*: 100–441874

*WASHINGTON FIELD OFFICE FILE NUMBER*: 100–43420

*CINCINNATI FIELD OFFICE FILE NUMBER*: 100–14477

*DOCUMENTATION OF PURPOSE*: By letter dated April 23, 1964, the Assistant Attorney General, IS Division, USDOJ, advised the Director, FBI, that information he has received concerning the M2C " . . . raises the possibility that the Committee or members thereof may have incurred an obligation to register with the Attorney General pursuant to terms of the Foreign Agents Registration Act. Accordingly, it is requested that an appropriate investigation

be initiated to determine whether . . . any . . . individual associated with the Committee or the conference at which it was formed, is acting or has agreed to act at the request of or under the direction of any person outside of the United States, or any person within the United States who may be associated with persons outside of the United States."

By letter dated August 10, 1964, the Assistant Attorney General of the IS Division, USDOJ, again wrote the Director of the FBI stating he has received information that " . . . these groups (M2C, among others) and certain individuals are coordinating their course of action and activities aimed at influencing draft age men to refuse to support the war in South Vietnam which could conceivably result in a violation of our Sedition Statutes. Accordingly, it is requested that your Bureau initiate an active investigation of the activities of these groups and the individuals involved under our Sedition Statutes, or any related statutes . . . "

FBI Field Offices, through a communication dated August 12, 1964, from FBIHQ, were advised of the Assistant Attorney General's request, and instructed to conduct the investigation outlined by him.

The investigation in this matter is consistent with that investigation necessary to fulfill the FBI's responsibilities pursuant to EO 10450, and the various Federal Statutes enumerated in paragraph (5) above. The records pertinent to the plaintiff were created during 1964 and 1965.

PREVIOUS DESCRIPTION OF PERTINENT DOCUMENTS : Hanigan Affidavit, pages 18 and 19, paragraphs 55 through 60; Second Loome Affidavit, Exhibit H, pages 13, 34 through 38 and 43.

(J) TITLE OF INVESTIGATION : "Student Committee to Send Medical Aid to the Front of National Liberation of South Vietnam; IS–C, Registration Act; Sedition."

FBIHQ FILE NUMBER : 100–441965

DOCUMENTATION OF PURPOSE : On April 22, 1964, the Director of the FBI provided information pertaining to the Student Committee to send medical aid to the Front of National Liberation of South Vietnam to the Assistant Attorney General of the IS Division, the USDOJ requesting, concerning the Student Committee, " . . . whether the facts contained therein indicate a possible violation of the Foreign Agents Registration Act warranting additional investigation by the FBI."

On April 23, 1964, the Assistant Attorney General of the IS Division, USDOJ, advised the Director of the FBI that " . . . it is requested that an appropriate investigation be initiated to determine whether . . any . . . individual associated with the Committee (M2C) or the conference at which it was formed, is acting or has agreed to act at the request of or under the direction of any person outside the United States, or any person within the United States who may be associated with persons outside the United States."

On August 10, 1964, the Assistant Attorney General of the IS Division, USDOJ, directed a letter to the Director of the FBI stating that " . . . it is requested that your Bureau initiate an active investigation of the activities of these groups (M2C) and the individuals involved under our Sedition Statutes or any related statutes, and that the results of the investigation be furnished to this Division as expeditiously as possible."

The investigation in this matter is consistent with that investigation necessary to fulfill the FBI's responsibilities pursuant to EO 10450, the Foreign Agents Registration Act, and the Sedition Statutes. The records pertinent to the plaintiff were created on October 7, 1964.

PREVIOUS DESCRIPTION OF PERTINENT DOCUMENTS : Hanigan Affidavit, page 20, paragraph 61.

(K) TITLE OF INVESTIGATION : "Institute for Policy Studies, IS–Miscellaneous."

FBIHQ FILE NUMBER : 100–447935

*WASHINGTON FIELD OFFICE FILE NUMBER*: 100–46784

*DOCUMENTATION OF PURPOSE*: After information was received at FBIHQ pertaining to the Institute for Policy Studies (IPS), the Director of the FBI advised an FBI Field Office on November 1, 1968, to " . . . conduct a preliminary investigation of the IPS to determine its aims and purposes . . . All pertinent information developed should be furnished . . (to FBIHQ) . . . along with your recommendation as to whether an investigation of the IPS is warranted . . ." pursuant to EO 10450 or any of the various Federal Statutes concerned with the internal security of the United States.

The investigation in this matter was consistent with that investigation necessary to fulfill the FBI's responsibilities pursuant to EO 10450 and the various Federal Statutes enumerated in paragraph (5) above.

The documents pertinent to plaintiff were created in March and September, 1969 and April, 1971.

*PREVIOUS DESCRIPTION OF PERTINENT DOCUMENTS*: Hanigan Affidavit, page 20, paragraph 62; Second Loome Affidavit, Exhibit H, pages 45 and 46.

(L) *TITLE OF · INVESTIGATION*: "American Committee on Africa; IS–Africa; Registration Act."

*FBIHQ FILE NUMBER*: 105–43756

*WASHINGTON FIELD OFFICE FILE NUMBER*: 105–30075

*DOCUMENTATION OF PURPOSE*: File created January, 1956, to contain information from confidential sources, media publications, correspondence and other miscellaneous material, until FBIHQ received information which caused the Director of the FBI to advise an FBI Field Office pertaining to the American Committee on Africa that "You should continue to remain alert for any indication captioned organization is controlled or infiltrated by members of the Communist Party or whether the organization or any of its officers are acting as agents of a foreign principal which would require registration under the provisions of the Foreign Agents Registration Act of 1938, as amended."

On November 18, 1959, Assistant Attorney General, IS Division, USDOJ, advised the Director of the FBI that "Additional information which may be developed on this organization will be reexamined as it is furnished in the light of the applicable definitions and criteria of the Subversive Activities Control Act of 1950." The record pertinent to plaintiff in this matter was created in February, 1963.

*PREVIOUS DESCRIPTION OF PERTINENT DOCUMENTS*: Hanigan Affidavit, page 20, paragraph 65; Second Loome Affidavit, Exhibit H, page 27.

(M) *TITLE OF INVESTIGATION*: "United Formosans for Independence; IS–CH (China)."

*FBIHQ FILE NUMBER*: 104–49241

*PHILADELPHIA FILE NUMBER*: 105–2828

*DOCUMENTATION OF PURPOSE*: Acting upon information received at FBIHQ, the Director of the FBI advised an FBI Field Office on June 25, 1956, to initiate an investigation of the Formosan's Free Formosa (forerunner of the United Formosans for Independence), to determine if that organization had committed " . . . any violation that might come within the Bureau's jurisdiction, bearing in mind that possible violations of the Extortion Statute, and the Foreign Agents Registration Act may be involved herein."

By record dated February 28, 1957, an internal FBIHQ memorandum stated "Captioned organization is being investigated primarily to determine whether it is acting in violation of the Foreign Agents Registration Act of 1938." The record pertinent to plaintiff in this matter was created in March of 1964.

*PREVIOUS DESCRIPTION OF PERTINENT DOCUMENTS*: Hanigan Affidavit, page 21, paragraph 66; Second Loome Affidavit, Exhibit H, page 20.

(N) *TITLE OF INVESTIGATION*: Various titles including "Demonstrations Protesting United States Intervention in Vietnam."

*FBIHQ FILE NUMBER*: 105–138315

*DOCUMENTATION OF PURPOSE*: This was a "control file" established to maintain records of demonstrations throughout the United States. By a letter dated February 15, 1965, to all FBI Field Offices, the Director of the FBI advised that FBIHQ was establishing an antiwar demonstration control file stating: "It is our responsibility to be aware of the activities of all subversive groups or individuals either openly or covertly involved in organizing or participating in these demonstrations. The Bureau does not desire that investigations be conducted of the demonstrations per se. Neither does it desire that investigations be conducted of the activities of legitimate pacifist organizations. However, it does desire that appropriate steps be taken through all available and logical informants and sources to learn of proposed demonstrations and to identify all subversive individuals and organizations involved." The investigation in this matter is consistent was that investigation necessary to fulfill the FBI's responsibilities pursuant to EO 10450 and the various Federal Statutes enumerated in paragraph (5), above.

The record pertinent to plaintiff in this matter was created on May 26, 1966.

*PREVIOUS DESCRIPTION OF PERTINENT DOCUMENT*: Hanigan Affidavit, page 21, paragraph 67.

(O) *TITLE OF INVESTIGATION*: "(name of individual deleted for privacy consideration)—Complainant; Fairlane Bowling Alley, Langley Park, Maryland, October 23, 1960, Sit-In Demonstration, Racial Matters."

*FBIHQ FILE NUMBER*: 157–6–Sub 3–85

*WASHINGTON FIELD OFFICE FILE NUMBER*: 157–0

*DOCUMENTATION OF PURPOSE*: This is a "control file" which was created to contain reports of demonstrations pertaining to racial matters within the state of Maryland. This "control file" is an administrative tool to assist in the possible future investigation of violations of Federal laws and to disseminate information to certain other Federal agencies to enable these agencies to fulfill their responsibilities pursuant to Federal law.

*PREVIOUS DESCRIPTION OF PERTINENT DOCUMENTS*: Hanigan Affidavit, page 21, paragraph 68; Second Loome Affidavit, Exhibit H, page 21.

(P) *TITLE OF INVESTIGATION*: "(name of individual deleted for privacy consideration); Selective Service Act of 1948; Conscientious Objector."

*FBIHQ FILE NUMBER*: 25–511696

*WASHINGTON FIELD OFFICE FILE NUMBER*: 25–27841

*DOCUMENTATION OF PURPOSE*: On October 29, 1964, the New York Field Office of the FBI, which was directing this investigation, advised FBIHQ that ". . . investigation was predicated upon receipt of a letter dated September 29, 1964, from the United States Attorney, Eastern District of New York, requesting that a conscientious objector investigation be conducted."

The investigation in this matter is consistent with that investigation necessary to fulfill the FBI's responsibilities pursuant to Title 50, U.S.C. (app.) 462.

In connection with this investigation of an individual other than the plaintiff, on October 30, 1964, the Washington Field Office of the FBI advised that plaintiff was involved in a demonstration. The WFO further reported that the subject of instant conscientious objector investigation also participated in this demonstration.

*PREVIOUS DESCRIPTION OF PERTINENT DOCUMENTS*: Second Loome Affidavit, Exhibit H, page 39.

(Q) *TITLE OF INVESTIGATION*: "Student Public Witness, February 16–17, 1962; Information Concerning (Internal Security)."

*FBIHQ FILE NUMBER*: 100–436876

*WASHINGTON FIELD OFFICE FILE NUMBER*: 100–39876

*DOCUMENTATION OF PURPOSE*: After information had been received at FBIHQ that a demonstration was to be held at Washington, D. C., under the name "Student Public Witness" FBIHQ, on January 15, 1962, advised certain FBI Field Offices as follows: "All offices should . . . report any information received regarding participation of individuals connected with subversive groups in this demonstration as individuals or groups representing subversive organizations."

Investigation in this matter is consistent with that investigation necessary to fulfill the FBI's responsibilities pursuant to EO 10450 and the various Federal statutes enumerated at paragraph (5), above.

The record pertaining to plaintiff in this matter was created on March 23, 1962.

*PREVIOUS DESCRIPTION OF PERTINENT DOCUMENT*: Second Loome Affidavit, Exhibit H, page 24.

(7) My review of the aforementioned records (paragraph (6), above) failed to indicate that any of these investigations as they pertained to the plaintiff were part of the program known as "cointelpro."

/s/ PAUL E. NUGENT
 Special Agent
 Federal Bureau of Investigation
 Washington, D. C.

Subscribed and Sworn to before me this 13th day of October, 1977.

/s/ Mildred M. Foster
 Notary Public

My commission expires September 14, 1981.