**Sonia DETTMANN, Appellant,**

v.

**U.S. DEPARTMENT OF JUSTICE.**

**No. 85–5728.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 28, 1986.

Decided Oct. 14, 1986.

As Amended Dec. 3, 1986.

---

James H. Lesar, Washington, D.C., for appellant.

Margaret A. Irving, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before BORK and STARR, Circuit Judges, and GESELL,* District Judge.

Opinion for the Court filed by Circuit Judge STARR.

Dissenting Opinion filed by District Judge GESELL.

STARR, Circuit Judge:

Appeal is taken in this FOIA case from the District Court's grant of summary judgment in favor of the Government. The principal issue before us concerns the propriety of the FBI's treatment of the FOIA request submitted by appellant, Sonia Dettmann, as it related to documents concerning investigations of events, organizations, or individuals other than Dettmann but which contained Dettmann's name. These sorts of records are designated as "see" references by the FBI and constitute a recurring question in the administration of FOIA as it pertains to the FBI.

## I

In January 1977, Dettmann, through counsel, submitted a FOIA request to the FBI for "copies of all documents ... which contain my name or make reference to me or any activities I have allegedly engaged in...." Complaint, Exhibit 1, Joint Appendix (J.A.) at 9. The Bureau released a number of documents, but withheld others, thereby prompting an administrative appeal by Dettmann in September 1977. That appeal led to another round of disclosures in March 1978. Importantly for the issue before us, the FBI's response to Dettmann in March 1978 specifically stated:

Also enclosed are additional documents which you will note relate to our investigation of other events, organizations or individuals. These references are referred to as "see" references. Inasmuch as your client's name was mentioned in

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

each of those documents, *only those portions containing a reference to her have been processed for release to you along with additional material to indicate the context in which her name was recorded.*

Declaration of David H. Cook, Exhibit 2 (Letter from Allen H. McCreight, Chief, FOIA–Privacy Act Branch to Sonia Dettman (Mar. 1, 1978) (emphasis added)).

This response, setting forth the FBI's general practice with respect to "see" references, prompted a reply from Dettmann's counsel contesting various aspects of the FBI's action but raising no objection to the Bureau's treatment of the "see" reference material.[1] Several months later, in October 1978, Dettmann wrote to the Director of the FBI clarifying her original request so as to encompass records located in any FBI Field Office. This letter specifically referred to the Bureau's "see" reference system, requesting that a Field Office search be made of records under Dettmann's name "or any other descriptive caption under which records in the Central Records System have been located under any 'see reference' system." The letter further requested "that the records of any other Field Office which is the Office of Origin of any 'see referenced' records located in the FBI Headquarters Central Records System be searched." Complaint, Exhibit 2, J.A. at 11.

This pattern of FBI response and requester dissatisfaction continued into the following year. In February 1979, Dettmann complained in writing to the Bureau about treatment of her request for documents from the various Field Offices. She also appealed certain deletions from the Electronic Surveillance Records Systems which had previously been released. Not a word was said, however, in protest against the

FBI's practice with respect to "see" reference materials.

This lawsuit was filed in April 1982. The two-page complaint chronicled the several requests to and communications with the Bureau and averred in general terms:

Although the FBI has released some documents to plaintiff, it continues to wrongfully withhold records, or portions thereof, which should be made available to her under the provisions of the Freedom of Information and Privacy Acts.

Complaint ¶ 9, J.A. at 7. The Bureau answered the complaint and thereafter moved for partial summary judgment as to the FBI Headquarters main file indexed to Dettmann and to those "see" references to her contained in the FBI Headquarters "GILROB" file (pertaining to a bank robbery investigation, *see supra* note 1). This motion was followed in due course by a full-blown motion for summary judgment, supported by various declarations, as to all other FBI Headquarters "see" references and certain FBI Field Office files indexed to Dettmann. These motions elicited not only Dettmann's opposition but a request for discovery, which in turn prompted a supplemental declaration from one of the FBI officials. Further submissions were filed by the Government in early 1984.

Based on these various filings, the District Court granted summary judgment. The court concluded that all segregable, non-exempt portions of the main files had in fact been released. As to the principal bone of contention before us, the "see" reference materials, the District Court held that the Bureau had released "the appropriate segments relating to the specific FOIA requests in that they have released the pages containing [Dettmann's] name and their context." Memorandum Opinion at 6. Citing three District Court decisions,[2] the

---

1. Dettmann's counsel's letter, dated April 4, 1978, objected to non-disclosure of certain documents relating to a bank robbery and filed under the code name "GILROB"; documents concerning the late Stanley Bond, a Massachusetts prison inmate who had been "close to" Dettmann; and semiweekly reports on Dettman furnished to

FBI Headquarters. Declaration of David H. Cook, Exhibit J.

2. *Posner v. Dep't of Justice,* No. 80–2695 (D.D.C. 1982); *Dunaway v. Webster,* 519 F.Supp. 1059 (N.D.Calif.1981); *Halprin v. Webster,* 1 Gov't Disclosure Serv. (P–H), ¶ 79–108, at 79,123 (D.D. C.1979).

trial court concluded that it would not require the Bureau to release "an entire document where plaintiff's name is only mentioned a few times" since the effect "would be to impose on the government a burdensome and time consuming task." *Id.* at 6–7. The court specifically observed in this respect that the Government's uncontradicted affidavits "sufficiently demonstrated that the portions of the 'see' reference of the documents withheld cover different subjects, refer to people unrelated to plaintiff and her activities, or, if related to plaintiff and thus within the scope of the request, fall within one of the nine FOIA exemptions." *Id.* at 7.[3]

## II

On appeal, Dettmann contends primarily that the District Court improperly sanctioned the Government's handling of the "see" reference files. Since we find Dettmann's other contentions to have been correctly analyzed and addressed by the District Court,[4] we confine ourselves to this point which Dettmann aptly describes as "[t]he crux of the dispute between the parties." Appellant's Reply Brief at 2.

We begin by acknowledging the force of Dettmann's primary argument. Her original FOIA request, carefully crafted by counsel, expressly asked for "all *documents* ... which contain my name or make any reference to me or any activities I have allegedly engaged in." Complaint, Exhibit 1, J.A. at 9 (emphasis added). Relying upon this broad language, Dettmann maintains that the FBI was duty bound to disclose the entire document(s) in the "see" reference files in which Dettmann's name (or a reference to her activities) was found. Dettmann attacks the contrary federal district court decisions, *see supra* note 2, upholding the FBI's practice in this respect as ill-considered and unreasoned. All she was bound to do, she contends, was to reasonably describe the records sought; here there is no contention, nor could there reasonably be, "that Dettmann failed adequately to describe the records she requested." Appellant's Reply Brief at 3. There is thus no quibble about her use of plain English; the dispute represents, rather, as Dettmann well describes it, the clash of a broadly worded request with the FBI's "general practice" in processing "see" reference materials. *Id.* (citing Third Supplemental Declaration of Walter Scheuplein, Jr., ¶ 6, J.A. at 183–84).

Faced with this assault, the Government contends that the Bureau was correct in treating entire documents found in the

---

3. Regarding Dettmann's request for discovery, the District Court concluded that the requisite tests for satisfying Exemption 7 had been met by the FBI. The court expressly observed that, "while deference is given to a law enforcement agency, the agency must show that a nexus exists between the investigated activities and federal laws, and that the investigation is based on a colorable claim." Memorandum Opinion at 9. That nexus was demonstrated, the court concluded, by detailed declarations that the investigations stemmed from concern that Dettmann's activities violated a host of federal statutes, ranging from rebellion or insurrection to espionage. *Id.* at 10–11. Plaintiff was also associated, the court observed, with underground organizations and had entered a guilty plea for unlawful possession of explosives, weapons, and stolen property. This combination of possible illegal activities, association with certain organizations, and her own admission of criminal conduct "provided the FBI with a nexus and colorable claim for the investigations." *Id.* at 11 (citing *King v. Dep't of Justice,* 586 F.Supp. 286 (D.D.C.1983)). These declarations also demon-

strated that the investigations were supported by "legitimate motives, rationale and purposes." *Id.* at 11. Discovery under these circumstances, the court concluded, would not lie: "Discovery should not be employed where there is only a slim hope of finding impropriety." *Id.* at 12 (citing *Military Audit Project v. Casey,* 656 F.2d 724, 751–52 (D.C.Cir.1981)).

4. We therefore uphold the District Court's disposition of the discovery issue and the exemption claims for the reasons well stated in that court's comprehensive Memorandum Opinion. As for Dettmann's remaining point, we are satisfied that the Bureau acted properly in deleting the names and identifying data concerning individuals whose names appeared in the FBI's investigatory files. The District Court correctly ruled as adequate the FBI's explanation of its rationale in not disclosing the various categories of Exemption 7 material.

We also observe that we have examined the records with care and have found no indication whatever of commingling non-exempt records with exempt records in these investigative files.

"see" reference files as outside the scope of the request. Invoking Dettmann's post-request communications which describe her request as one for "FBI records 'relating to' herself," Appellee's Brief at 8, the Government contends that "[a] plain, common sense reading of appellant's requests ... indicates that she was interested in only those records that pertained to herself." *Id.* But the Government arrives at this favorable interpretation only by downplaying the wording of the original request—which as we have seen was broadly crafted in lawyerlike fashion—and emphasizing the subsequent communications that, arguably, narrowed the original dragnet language.

We decline to embrace the Government's parsimonious reading of Dettmann's request. But we also decline to, in effect, overturn an established, general practice of the FBI in coping with the increasing demands of FOIA requests when that practice was specifically brought to appellant's attention in writing and has since been judicially sanctioned.[5] Under these particular circumstances, we are persuaded that Dettmann's appeal must be rejected for failure to exhaust her administrative remedies. As we have previously related, appellant, through counsel, remonstrated with the FBI for various omissions and deletions, but not a word was said about the "see" reference methodology. Indeed, in the face of the Bureau's clear statement of its approach, Dettmann requested only the materials in the GILROB file, documents concerning her relationship with the late Stanley Bond, and semi-weekly FBI reports on her activities. *See supra* note 1.[6] In crafting this demand, Dettmann's counsel expressly mentioned the "see" reference system twice in the course of a three-paragraph letter, but interposed no general objection to the Bureau's processing of her request pursuant to that system.

We decline under these circumstances to countenance a failure at the administrative level to take issue with a sensible, general practice developed by the Bureau and clearly articulated to the FOIA requester. Dettmann is particularly ill-situated to complain, for she was assisted by counsel in these proceedings and counsel, as evidenced by the express references to the FBI's procedures, knew full well what the FBI had done.[7] Dettmann specifically pleaded exhaustion of administrative remedies in her complaint, Complaint ¶ 8, J.A. at 7, and that averment was denied. Answer ¶ 9, J.A. at 17.[8]

It goes without saying that exhaustion of remedies is required in FOIA cases. As

---

5. *See supra* note 2 (citing cases); *see also Irons v. Levi,* 451 F.Supp. 751, 753 (D.Mass.1978); *rev'd on other grounds sub nom. Irons v. Bell,* 596 F.2d 468 (1st Cir.1979). No authority has been cited to us, nor have we found any, disapproving this practical approach to handling FOIA requests. Indeed, the FBI's general practice of processing "see" references in the manner employed in this case is supported by common sense—it avoids routine, potentially wasteful disclosure of enormous amounts of material that bear no relationship whatsoever to the focus of a FOIA request.

6. Indeed, Dettmann's experience with the GILROB file demonstrates the wisdom of requiring exhaustion. In its initial provision of materials to Dettmann, the FBI included only those parts of the GILROB file pertaining to her. After Dettmann complained that the Bureau had made available only "a dozen or so pages of reports" from the file, Declaration of David H. Cook, Exhibit J, the FBI offered her access to the entire GILROB file if she would bear the cost of searching and duplicating. Declaration of David H. Cook, Exhibit K. Dettmann declined to take advantage of this opportunity, and the District Court properly concluded that the issue of these GILROB file "see" references was moot. Memorandum Opinion at 5 n. 1. This indicates, contrary to the dissent's suggestion that contesting the "see" reference policy would have been futile, Dissent at 1478, that if Dettmann had simply asked the FBI for the entire documents containing "see" references to her, the Bureau would have made the documents available. Thus, had her current objections to the "see" reference system been presented during the administrative process, this portion of the dispute may never have reached the courts.

7. We observe that Dettmann's able counsel in this litigation was not representing her in the administrative proceedings.

8. Although the "see" reference issue was fully litigated in the District Court, we are not precluded from deciding the case on appeal on grounds of non-exhaustion. To the contrary, non-exhaustion may be raised *sua sponte* by a reviewing court, *see Weinberger v. Salfi,* 422

this court has recently had occasion to state in the clearest of language, "[e]xhaustion of such [administrative] remedies is required under the Freedom of Information Act before a party can seek judicial review." *Stebbins v. Nationwide Mutual Insurance Co.*, 757 F.2d 364 (D.C. Cir.1984); *see also Crooker v. United States Secret Service*, 577 F.Supp. 1218, 1219 (D.D.C.1983). It is likewise clear that a plaintiff may have exhausted administrative remedies with respect to one aspect of a FOIA request—and thus properly seek judicial review regarding that request—and yet not have exhausted her remedies with respect to another aspect of a FOIA request. *See, e.g., Durns v. Bureau of Prisons*, 605 F.Supp. 1213, 1214 n. 1 (D.D.C. 1985). That, in our view, is precisely what occurred here. In the course of the years of communications back and forth between requester and agency, Dettmann made no attempt to present for administrative review any objections she may have had to the FBI's handling of "see" reference documents.[9] If exhaustion of remedies is to have meaning, it surely must bar review of the claim advanced here.

*Affirmed.*

GESELL, District Judge, dissenting.

I respectfully dissent: The majority has treated this routine FOIA case in a manner that misconceives the special nature of this type of litigation. The holding that Dettmann should have pursued administrative remedy twice frustrates the purpose of the Act and is impractical and unnecessary.

FOIA is a disclosure statute. Its effectiveness often depends on prompt response. In many instances the purposes of the Act are already being thwarted by delay. To require a requester to appeal a second time if he is not satisfied with a partial success on his first appeal further encumbers the already overloaded, underfinanced FOIA staffs of many agencies. FOIA appeals presently cannot be perfected in numerous cases because of the 20–day limitation that permits suit if an appeal is not completed in that time.

Nothing in the Act or regulations suggests that intraagency appeals have particular significance other than to assure uniformity of agency interpretation and certainly there is nothing to suggest the double appeal approach sponsored by the majority here. There is, in any event, no FOIA *stare decisis*. Dettmann will get the documents eventually in another case brought under her name or by someone else on her behalf.

There are many practical considerations that should have been weighed. The parties have been given no opportunity to brief them or advise this Court or the District Court. A few considerations will be mentioned merely to illustrate. The bulk of

---

U.S. 749, 786, 95 S.Ct. 2457, 2477, 45 L.Ed.2d 522 (1975) (Brennan, J., dissenting), even when it has no bearing on jurisdiction, *see Power Plant Division v. OSHRC*, 673 F.2d 111, 112 (5th Cir.1982). We recognize that such a course means the parties did not consider exhaustion, and we are thus without the benefit of their briefs on this issue. But we find nothing novel in our decision today. Exhaustion has long been required in FOIA cases. In addition, we are convinced that the policies underlying the exhaustion requirement would be served by applying the principle here. In particular, it would be both contrary to "orderly procedure and good administration" and unfair "to those who are engaged in the tasks of administration" to decide an issue which the FBI never had a fair opportunity to resolve prior to being ushered into litigation. *United States v. Tucker Truck Lines*, 344 U.S. 33, 36–37, 73 S.Ct. 67, 68–69, 97 L.Ed. 54 (1952).

9. The dissent characterizes our ruling as imposing a "second appeal" requirement. Dissent at 1478. Not so. All we require is that Dettmann first utilize the administrative process to present her objections. This well-established exhaustion principle applies with particular force by virtue of the facts of this case. As we have noted, *see supra* Part I, Dettman's FOIA request went through several rounds of request, disclosure, complaint, and disclosure. During this process, the "see" reference policy was specifically called to her attention. She filed at least two administrative appeals, *see* Declaration of David H. Cook, Exhibits F & O, one of which involved, in part, a "see" reference document. *See supra* note 6. But Dettmann at no point took issue with the FBI's "see" reference policy. Far from requiring a second appeal, our ruling requires only that she file a first appeal, or at least interpose some objection during the administrative process.

requesters proceed without counsel, as did Dettmann in the later stages of her case. Many are incarcerated. They do not appear, but look to the Court to protect their interests. To add a further legalistic complexity may necessitate providing lawyers, at government expense, to protect procedural rights which the Court cannot monitor in advance. The ruling is also inexact and does not define the types of cases requiring a second appeal. Moreover, the second appeal would have been wholly futile. The "see" policy developed by the Department of Justice has been in effect for some time and is being followed in cases now before the courts. Numerous pending "see" cases will only be confused. The delaying effect of this ruling has not been measured or apparently considered.

The majority candidly admits that Dettmann clearly sought the full text of certain documents and after appeal got only part, without the remaining part being withheld under any claim of exemption. I would remand with direction that the remaining portions of the "see" documents be processed in regular course. To require Dettmann to file a new suit and start all over again to get what she seeks is a waste that places form over substance, delays relief and unnecessarily conflicts with the purposes of the statute, and is against the best interests of the agencies affected.