Edward SPANNAUS, Appellant,

v.

U.S. DEPARTMENT OF JUSTICE.

No. 86–5611.

United States Court of Appeals, District of Columbia Circuit.

Argued April 27, 1987.

Decided July 21, 1987.

James H. Lesar, Washington, D.C., for appellant.

Philip A. Kesaris, Dept. of Justice, with whom Joseph E. diGenova, U.S. Atty., and Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Pattie A. Goldman and Alan B. Morrison, Washington, D.C., were on the brief for

amicus curiae, Public Citizen, urging reversal of the District Court decision.

Before MIKVA and WILLIAMS, Circuit Judges, and WEIGEL,* Senior District Judge.

Opinion for the Court filed by Circuit Judge WILLIAMS.

WILLIAMS, Circuit Judge:

Edward Spannaus filed this Freedom of Information Act ("FOIA") suit, 5 U.S.C. § 552(a)(4)(B) (1982), to compel the Federal Bureau of Investigation to disclose certain material he requested in two separate letters nearly eight years earlier. The District Court dismissed his suit as untimely under the six-year limitations period of 28 U.S.C. § 2401(a) (1982). *Spannaus v. Department of Justice*, 643 F.Supp. 698 (D.D.C.1986). We affirm.

## I. INTRODUCTION

### A. *The FOIA Requests*

Appellant filed two FOIA requests in 1977 with the New York Field Office of the FBI ("New York"), one dated September 20 and the other September 21.

*The September 20 request.* The September 20 letter requested records pertaining to Gregory F. Rose, an alleged FBI informant. By letter dated October 5, 1977, New York acknowledged receipt of appellant's request. New York advised him that it would process his request to the extent possible, but was forwarding it to FBI Headquarters, where most of the investigative activity concerning Rose was "reported." FBI Headquarters acknowledged and denied appellant's request in full on November 22, 1977, citing the nondisclosure provisions of the Privacy Act of 1974, 5 U.S.C. § 552a(b) (1982 & Supp. III 1985).

On December 23, 1977, appellant filed an administrative appeal. The Justice Department's Office of Privacy and Information Appeals ("OPIA") affirmed the denial on other grounds on February 17, 1978, informing appellant of his right to judicial review.

*The September 21 request.* Appellant's September 21 request was for records pertaining to 11 named organizations associated with Lyndon H. LaRouche, including the National Caucus of Labor Committees ("NCLC"). By letter dated October 5, 1977 (the same letter that acknowledged the September 20 request), New York advised appellant that it was also forwarding this request to FBI Headquarters. On October 19, 1977, New York partially denied appellant's request, a decision that appellant administratively appealed on October 28, 1977. Almost 15 months later, on January 19, 1979, the OPIA released several documents that New York withheld, but otherwise affirmed New York's partial denial.

In the meantime, FBI Headquarters was conducting its own search on appellant's September 21 request. On January 30, 1979, and again on June 14, 1979, FBI Headquarters released certain records, but advised appellant that it was withholding others. Appellant once again appealed administratively, this time by letter dated June 29, 1979. Six weeks later, on August 15, 1979, the OPIA affirmed the FBI Headquarters' partial denial.

### B. *This Litigation*

On July 26, 1985, seven years and ten months after appellant filed his two September 1977 requests, appellant filed suit in the United States District Court for the District of Columbia to compel FBI to produce the material he had sought in both FOIA requests.[1] The District Court dis-

---

* Of the United States District Court for the Northern District of California, sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Throughout the pendency of appellant's FOIA requests, he was also a party to an unrelated lawsuit in the United States District Court for the Southern District of New York, alleging that the FBI was violating his civil and constitutional

rights. *See LaRouche v. Webster*, 75 Civ. No. 6010 (MJL), mem. op. (S.D.N.Y. Oct. 23, 1984) [Available on WESTLAW, DCT database] (available on LEXIS), *reprinted in* Joint Appendix ("J.A.") at 56. In April 1982, he sought leave to amend the complaint in that suit to compel the FBI to release the documents that were responsive to his September 21 FOIA request. The district court dismissed appellant's FOIA claim

missed the suit as time barred under 28 U.S.C. § 2401(a)'s six-year statute of limitations. *Spannaus v. Department of Justice,* 643 F.Supp. 698 (D.D.C.1986).

Appellant contends, as he did below, that § 2401(a) does not apply to FOIA suits. In the alternative, he argues that § 2401(a) would not bar his suit to compel compliance with his September 21 request because the limitations period does not begin to run or is tolled until final administrative disposition of the request.

## II. APPLICABILITY OF § 2401(a) TO FOIA

■ 28 U.S.C. § 2401(a) provides, in relevant part:

> every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.

The law of this circuit is clear: the words "every civil action" mean what they say. While a negative-pregnant dictum in a decade-old case weakly suggested a possible exception for "exclusively" equitable claims, *see Saffron v. Department of the Navy,* 561 F.2d 938, 944 (D.C.Cir.1977) (where "remediation does not lie *exclusively* within the domain of equity, the availability of legal relief ... summons the statute of limitations into play as to the whole") (emphasis added), *cert. denied,* 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978), this court's subsequent opinions clarify beyond dispute that § 2401(a) applies to all civil actions whether legal, equitable or mixed. *See, e.g., Calhoun v. Lehman,* 725 F.2d 115, 116, 117 (D.C.Cir. 1983); *Walters v. Secretary of Defense,* 725 F.2d 107, 111–14 (D.C.Cir.1983), *reh'g denied,* 737 F.2d 1038 (D.C.Cir.1984) (en banc) (per curiam); *Impro Products, Inc. v. Block,* 722 F.2d 845, 849–50 & n.8 (D.C. Cir.1983), *cert. denied,* 469 U.S. 931, 105 S.Ct. 327, 83 L.Ed.2d 264 (1984); *Gull Airborne Instruments, Inc. v. Weinberger,* 694 F.2d 838, 844 & n.6 (D.C.Cir.1982); *White v. Civil Service Commission,* 589 F.2d 713, 715 (D.C.Cir.1978) (per curiam),

*cert. denied,* 444 U.S. 830, 100 S.Ct. 58, 62 L.Ed.2d 39 (1979); *Oppenheim v. Campbell,* 571 F.2d 660, 662 (D.C.Cir.1978). We have recognized an exception only for a narrow class of "actions—most notably habeas corpus—[that] have always been regarded as outside the scope of the statute of limitations." *Walters,* 725 F.2d at 113 (citation omitted). Appellant suggests that this long line of circuit authority is "at variance with [pre-*Saffron*] Supreme Court precedent and should be disregarded," Brief for Appellant at 19, but until action by the Supreme Court or an *en banc* panel of this court supervenes, we must adhere to the law of the circuit.

Appellant next suggests a couple of policy reasons to engraft into § 2401(a)'s categorical language a special FOIA exception. First, he argues that it would be absurd to impute to Congress the intention to apply a statute of limitations to a cause of action that a party can resuscitate at will simply by resubmitting a FOIA request. Second, he argues that application of the statute of limitations would encourage litigation and discourage resort to permissive administrative appeals, thereby "contraven[ing] the spirit, thrust and purpose of the Act." Brief for Appellant at 16.

■ Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed. *See United States v. Mottaz,* 476 U.S. 834, 106 S.Ct. 2224, 2229, 90 L.Ed.2d 841 (1986); *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). Where clear language restricts our jurisdiction, we may not overturn it merely by invoking spirits and thrusts.

■ Appellant's policy arguments are, at any rate, unpersuasive. Applying a statute of limitations to FOIA claims leaves agencies free after a reasonable period to dispose of denied FOIA requests that have never been disputed in court. The alterna-

---

"without prejudice," J.A. at 59, reasoning that if it allowed addition of an entirely new claim four years after suit had been filed, it "would in

effect become an open complaint bureau for the ongoing conflicts between the parties." J.A. at 57.

tive, which would compel agencies to retain their files on such requests indefinitely, imposes significant burdens but offers a prospect of only rarely contributing to the sum of human happiness.[2]

Nor does application of the statute of limitations encourage litigation or discourage resort to permissive administrative appeals. As we discuss below, FOIA permits requesters to file suit shortly after they file their requests or administratively appeal their denial. But that does not mean that they will immediately scramble to the courthouse to avoid running afoul of the six-year limitations period. Six years is a long time, ample time within which to pursue an administrative appeal to completion or, in instances of agency delay, to invoke the aid of the court.

In short, we see no reason to inject an exception for FOIA claims into § 2401(a)'s reference to "every civil action."

### III. First Accrual of the Cause of Action

Appellant apparently concedes that if § 2401(a) applies to FOIA actions, as we have held it does, his claim with respect to the September 20 request is time barred. He contends, however, that the claims with respect to his September 21 request are not barred because the OPIA did not dispose of his administrative appeal until August 15, 1979. Thus, he argues, the filing of the suit on July 26, 1985 fell (just barely) within the limitations period.

As a preliminary matter, neither appellant nor the government seems to distinguish, for purposes of this argument, between those documents responsive to appellant's September 21 request that *New York* withheld and those that *FBI Headquarters* withheld. As to the former, the OPIA disposed of appellant's appeal on January 19, 1979. Thus, even giving appellant the benefit of his argument, his cause of action was, as to those documents, filed over six months late.

Appellant's argument also fails to distinguish between the two theories that it comprises. The first theory, *nonaccrual*, is that the cause of action did not "first accrue"—and the statute of limitations did not begin to run—until August 15, 1979, when the administrative appeal ended. The second theory, *tolling*, is that the statute of limitations was tolled, presumably from the date of appellant's request (appellant is unclear) until the final disposition of the administrative appeal. While success on either of the two theories would here yield the same result, they follow different analyses.

#### A. First Accrual in the Context of Administrative Action

■■■ A cause of action against an administrative agency "first accrues," within the meaning of § 2401(a), as soon as (but not before) the person challenging the agency action can institute and maintain a suit in court. *See, e.g., Crown Coat Front Co. v. United States,* 386 U.S. 503, 510–11, 87 S.Ct. 1177, 1181–82, 18 L.Ed.2d 256 (1967); *Impro Products, Inc. v. Block,* 722 F.2d 845, 850 (D.C.Cir.1983), *cert. denied,* 469 U.S. 931, 105 S.Ct. 327, 83 S.Ct. 327 (1984).[3] Tautologically, a suit cannot be

---

**2.** There may well be some benefit to retaining certain abandoned FOIA requests. If a party later requests the same information the availability of files on an old FOIA request could save some time. But many FOIA requests are unlikely ever to be duplicated, and certain FOIA exemptions need to be reconsidered as either Congress or time changes the factors on which they depend. *See, e.g.,* 5 U.S.C. § 552(b)(6) (1982); 5 U.S.C.A. § 552(b)(7)(C) (Pocket Part 1987).

**3.** That a statute of limitations cannot begin to run against a plaintiff *before* the plaintiff can maintain a suit in court seems virtually axiomatic. But in *McMahon v. United States,* 342

U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951), a case not involving § 2401(a), the Supreme Court held that a statute of limitations on suits by seamen against the United States for negligence and unseaworthiness began to run at the time of injury, even though administrative exhaustion was a prerequisite to suit. *Crown Coat* casts considerable doubt on *McMahon's* vitality in the § 2401(a) context. If *McMahon* could apply at all to § 2401(a), *Crown Coat* makes it clear that it would only be in those exceptional circumstances where (as was the case in *McMahon,* 342 U.S. at 27–28, 72 S.Ct. at 19) there is no deadline for the filing of an administrative appeal; only in such cases could an injured party

maintained in court—and a cause of action does not "first accrue"—until a party has exhausted all administrative remedies whose exhaustion is a prerequisite to suit. *See Crown Coat*, 386 U.S. at 510–19, 87 S.Ct. at 1181–86. Such remedies are often curiously called "mandatory remedies," even though no one has ever been penalized for failing to pursue them. Conversely (and also tautologically), where the availability or pendency of an administrative remedy does not bar suit, a suit can be maintained in court—and a cause of action can "first accrue." *See, e.g., Soriano v. United States*, 352 U.S. 270, 274–75, 77 S.Ct. 269, 272–73, 1 L.Ed.2d 306 (1957); *Hurick v. Lehman*, 782 F.2d 984, 987 (Fed. Cir.1986); *Walters v. Secretary of Defense*, 725 F.2d at 114; *White v. Secretary of the Army*, 629 F.Supp. 64, 67 (D.D.C.1985). Such remedies are commonly tagged "permissive."

Nomenclature aside, the pivotal question for application of § 2401(a) to agency action is whether or not the failure to avail oneself of available administrative appeals would bar suit in court. *See also Lins v. United States*, 688 F.2d 784, 786–87 (Ct.Cl. 1982) (using mandatory/permissive labels in construing identical language in 28 U.S.C. § 2501), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 995 (1983); *Bonen v. United States*, 666 F.2d 536, 539 (Ct.Cl.1981) (same), *cert. denied*, 456 U.S. 991, 102 S.Ct. 2273, 73 L.Ed.2d 1286 (1982).[4]

To contradict the wealth of authority drawing that distinction, appellant quotes only this court's language in *Impro Products*. In that case this court applied § 2401(a) to bar an action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 (1982), brought more than six years after the agency's "final agency action,"

*id.* § 704. This court said that "[i]n the agency context, the logical inference is that the cause of action accrues when all statutorily required *or permitted* agency review has been exhausted." 722 F.2d at 850 (emphasis added). Of course, since "no formal review procedures existed" at all in that case, *id.*, any inconsistency with the settled principles discussed above would be dictum.

There is, however, no inconsistency. It is clear from the context that the court did not mean the terms "required" and "permitted" to be a masked reference to the mandatory/permissive nomenclature prevalent in this area. Rather, the court meant only to describe the exhaustion doctrine, under which remedies that a statute expressly "require[s]" and those that it "permit[s]" ordinarily must be exhausted before a suit can be maintained. No case quoting the "permitted" language in *Impro Products* has read it to abolish the conventional distinction for purposes of § 2401(a) between mandatory and permissive administrative appeals. *See White v. Secretary of the Army*, 629 F.Supp. at 67, 68 (expressly reaffirming distinction); *Bittner v. Secretary of Defense*, 625 F.Supp. 1022, 1029 (D.D.C.1985) (quoting *White*).[5]

### B. *Exhaustion under FOIA*

Our next step is to distinguish between those periods during which the availability of an administrative FOIA remedy bars suit and those during which it does not (i.e., the periods during which exhaustion may be characterized respectively, as mandatory and permissive). We recently reiterated the law regarding exhaustion in FOIA cases:

---

defer indefinitely the operation of the statute of limitations. *McMahon* would not, at any rate, help appellant since its application here could only accelerate the date of accrual.

**4.** For purposes of accrual, "there is certainly no distinction between the companion statutes of limitations found at section 2401(a) and section 2501." *Walters v. Secretary of Defense*, 725 F.2d at 114.

**5.** *Bittner* is an odd case. While the district court in that case noted that the administrative appeal was "not required in order to perfect a right to sue," 625 F.Supp. at 1026, it dismissed a cause of action for failure to exhaust those procedures, *id.* at 1029. Thus, the court behaved as if the administrative procedures were mandatory. Accordingly, the court, in reiterating the *Impro Products* dictum, did not treat it as authority for the proposition that the availability of permissive appeals delays accrual.

It goes without saying that exhaustion of remedies is required in FOIA cases. As this court has recently had occasion to state in the clearest of language, "[e]xhaustion of such [administrative] remedies is required under the Freedom of Information Act before a party can seek judicial review." *Stebbins v. Nationwide Mutual Insurance Co.*, 757 F.2d 364 (D.C.Cir.[1985]); *see also Crooker v. United States Secret Service*, 577 F.Supp. 1218, 1219 (D.D.C.1983).

*Dettmann v. Department of Justice*, 802 F.2d 1472, 1477 (D.C.Cir.1986); *see also id.* at 1477 n. 8 ("Exhaustion has long been required in FOIA cases.").

 Contrary to appellant's contention, that statement stands only for the unexceptionable proposition that exhaustion is a prerequisite to suit. It does not address the manner in which exhaustion may be accomplished. By virtue of a special provision virtually unique to FOIA,[6] exhaustion is complete—for purposes of allowing recourse to the courts—on the expiration of specified deadlines:

> Any person making a request to any agency for records ... shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph.

5 U.S.C. § 552(a)(6)(C). By "deem[ing]" exhaustion to occur on expiration of the relevant time limits, the statute provides for constructive exhaustion, which permits early "accrual" of a cause of action in the interests of timely disclosure. Once constructive exhaustion occurs, any available administrative appeal—i.e., actual exhaustion—becomes permissive in the sense in which the term is used here; the requester may pursue it, but his failure to do so does not bar a lawsuit. *See, e.g., Virginia Transformer Co. v. Department of Energy*, 628 F.Supp. 944, 947 (W.D.Va.1986); *Jenks v. United States Marshals Service*, 514 F.Supp. 1383, 1385–87 (S.D.Ohio 1981);

*Information Acquisition Corp. v. Department of Justice*, 444 F.Supp. 458, 462 (D.D.C.1978).

There are two "time limit provisions" that trigger constructive exhaustion. First, the agency has "ten days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any [FOIA] request" within which to "determine ... whether to comply with such request...." 5 U.S.C. § 552(a)(6)(A)(i). Second, the agency has "twenty days (excepting Saturdays, Sundays, and legal public holidays) after receipt of ... [an administrative] appeal" within which to "make a determination" on that appeal. *Id.* § 552(a)(6)(A)(ii). In either event, the agency can, citing one of three enumerated "unusual circumstances," extend either time limit for up to 10 working days, if it notifies the requester expressly. *Id.* § 552(a)(6)(B).

Appellant seems to read *Dettmann*'s statement that "exhaustion of remedies is required" as somehow altering this clear reading of the statutory scheme. But *Dettmann*'s reliance on both *Crooker v. United States Secret Service*, 577 F.Supp. 1218, 1219 (D.D.C.1983), and *Stebbins v. Nationwide Mutual Insurance Co.*, 757 F.2d 364 (D.C.Cir.1985) (per curiam), confirms that the *Dettmann* court intended to break no new legal ground. *Crooker* explicitly analyzes both constructive and actual exhaustion. 577 F.Supp. at 1219–20. *Stebbins* summarily dismisses a FOIA suit for failure to exhaust administrative remedies, without recounting the circumstances of the request, 757 F.2d at 366, but cites with approval *Hedley v. United States*, 594 F.2d 1043, 1044 (5th Cir.1979) (per curiam), which clearly recognized the distinction.

Nor do the facts of *Dettmann* signal a departure from well-settled law. Dettmann requested the FBI to turn over "copies of *all documents* ... which [among other things] contain my name...." 802 F.2d at 1473 (emphasis added) (citation omitted). Instead, pursuant to FBI policy regarding such "see" references, she was given (with some deletions) only the *por-*

---

**6.** *Cf. McMahon v. United States*, 342 U.S. 25, 27–28, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951) (noting similar constructive-exhaustion provision in reg-

ulations governing seamen's claims against United States for negligence and unseaworthiness).

*tions* of documents that contained her name. *Id.* at 1473–74. Dettmann administratively appealed several deletions. But "[n]ot a word was said ... in protest against the FBI's practice with respect to 'see' reference materials." *Id.* at 1474. The court dismissed Dettmann's subsequent lawsuit protesting the FBI's "see" reference policy, because of her failure to exhaust her remedies on that issue.

There is no indication that the FBI failed to meet the 10–day deadline for initial response, thereby triggering the constructive-exhaustion provision and obviating actual exhaustion.[7] But even if it had, the court's conclusion that Dettmann's suit was barred for want of actual exhaustion is perfectly reconcilable with the scheme described above. The court might simply have assumed that when an agency makes its initial response after the 10–day deadline but before the requester has filed suit, the administrative appeal's mandatory character is restored. Under that view of things, the requester's statutory right to sue might perhaps be either suspended (for the brief period during which an administrative appeal is available[8] plus the 20 working days within which it must be processed) or entirely cut off (if the requester never appeals the denial). We need not here discern whether the *Dettmann* court merely assumed that constructive exhaustion had not occurred or contemplated a revival of the actual exhaustion requirement. In either event, *Dettmann* did not in any way undermine the proposition that a cause of action under FOIA first accrues when the requester first exhausts his remedies, either constructively or actually.

C. *First Accrual of Appellant's Cause of Action*

Resolution of this case, then, turns on whether appellant, unlike Dettmann, *con-*

*structively* exhausted his administrative remedies some time before the OPIA disposed of his administrative appeal. He clearly did.

■ Despite the fact that appellant's September 21 request was labeled "BY HAND," Joint Appendix ("J.A.") at 13, the District Court gave him the benefit of the doubt, assuming a one-week mailing period. *See* 643 F.Supp. at 701 n. 1. Thus, the FBI's New York Office had, at the very latest, until October 13 (10 working days after assumed receipt of the request) to make the determination required by § 522(a)(6)(A)(i).[9] Since it failed to do so, appellant's cause of action first accrued, at the very latest, in October 1977, more than seven years and nine months before appellant filed this suit.

IV. TOLLING PENDING FINAL ADMINISTRATIVE DISPOSITION

We now turn to the tolling aspect of appellant's argument, which if accepted would save his right to sue for the FBI Headquarters' withholding of documents that were responsive to the September 21 request. That theory, supported by amicus, *see* Brief for Amicus Curiae Public Citizen at 1–9, is that the statute of limitations was tolled until August 15, 1979, the date on which the OPIA affirmed FBI Headquarters' partial denial—even though the cause of action first accrued nearly two years earlier.

In order for appellant's tolling theory to salvage his suit, the statute of limitations would have to be tolled at the very least for the 20–month period between accrual (October 1977) and FBI Headquarters' partial denial of his request (June 14, 1979).

---

**7.** The opinion reveals only that Dettmann requested the documents in January 1977 and received the first batch of them by September 1977. 802 F.2d at 1473. It says nothing about when the FBI "determine[d] whether to comply with" Dettmann's request.

**8.** *See* 28 C.F.R. § 16.8(a) (1986) (30–day deadline for administrative appeals of FOIA requests denied by branch of Justice Department).

**9.** In fact, New York did respond on October 5 (within 10 working days, even assuming hand delivery). But its response merely acknowledged the request and informed appellant that the request would be forwarded to FBI Headquarters, as well.

Although appellant would also have us toll the statute of limitations between the FBI Headquarters' partial denial and the OPIA's final disposition of his appeal (August 15, 1979), that two-month tolling could not independently salvage his lawsuit.

▉ In addressing this argument, then, we need not resolve the question we left open in our discussion of *Dettmann:* whether an agency's initial response (denying documents) that arrives after the 10-day deadline, but before the requester has filed suit, suspends or cuts off the right to sue. Nor need we decide the related question: whether, if so, the statute of limitations would toll for the brief period during which such an appeal would be mandatory. In no case could such period exceed the 30-day period during which a requester may file an administrative appeal to the OPIA, 28 C.F.R. § 16.8(a) (1986), plus the 20-working-day period allotted for OPIA processing of the appeal. On the facts of this case, it could not exceed six weeks: the two weeks that it took appellant to file his appeal with the OPIA (on June 29, 1979) plus the 20-working-day period allotted for OPIA processing. Tolling for so brief a period would not be enough here.

▉ For their position that the statute of limitations is tolled from the date it accrues until final administrative disposition, amicus and appellant collectively advance three central arguments, each of which we reject.

First, appellant cites dicta in cases from other circuits for the proposition that pursuit of any administrative remedy tolls § 2401(a). *See Geyen v. Marsh,* 775 F.2d 1303, 1307–08 (5th Cir.1985); *Nichols v. Hughes,* 721 F.2d 657, 660 (9th Cir.1983); *Mosley v. Secretary of the Navy,* 522 F.Supp. 1165, 1167 & n. 5 (E.D.Pa.1981), *aff'd without published opinion,* 688 F.2d 823 (3d Cir.1982). All three cases involved the timeliness of a cause of action challenging the plaintiff's discharge from the armed forces. The first two of those cases explicitly stated, *see Geyen,* 775 F.2d at 1306, or assumed for the sake of argument, *see Nichols,* 721 F.2d at 660, that the administrative appeals in question were ones

whose availability or pendency would bar suit. They therefore say nothing about administrative consideration that obviously does not bar suit (except possibly for the brief period described above). The third case merely assumed for the sake of argument that the statute of limitations should be tolled for the two-year period in which the plaintiff pursued an administrative appeal that was (according to the court) permissive, 522 F.Supp. at 1167, but the assumption was dictum as the tolling did not in any event overcome the bar of the statute. *Id.*

Second, both appellant and amicus rely on *Burnett v. New York Central Railroad Co.,* 380 U.S. 424, 427–29, 85 S.Ct. 1050, 1054–55, 13 L.Ed.2d 941 (1965), for the proposition that limitations periods must be applied or tolled in light of the purpose of the statute that forms the basis of the underlying cause of action. *See also Order of Railroad Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944); *Mt. Hood Stages, Inc. v. Greyhound Corp.,* 616 F.2d 394, 396–406 (9th Cir.), *cert. denied,* 449 U.S. 831, 100 S.Ct. 99, 66 L.Ed.2d 36 (1980). Thus, they argue, FOIA's purpose to encourage administrative resolution of requests requires us to toll § 2401(a) pending a requester's pursuit of such administrative resolution. Appellant advanced precisely the same policy concern in endeavoring to persuade us that § 2401(a) was inapplicable to FOIA suits. Again we are not convinced, and for the same reasons. First, § 2401(a) is more than an ordinary statute of limitations; it is a condition on the waiver of sovereign immunity, and we are obliged to construe such waivers strictly. Second, as we have already observed, we doubt that faithful application of a six-year statute of limitations from the date of first accrual will cause the flood of litigation that appellant and amicus predict.

Finally, it is conceivable, as amicus argues and as the District Court recognized, 643 F.Supp. at 704, that our reading of § 2401(a) would bar the lawsuit of an unwitting requester who was duped by an agency into waiting for a response six

years from the date of accrual. That is, of course, not what happened here. Nor is there any evidence that it usually or often happens. At any rate, that danger, which exists in any case where permissive remedies are available, is insufficient to overcome the clear language of a statute of limitations that conditions a waiver of sovereign immunity.

■ Since appellant's cause of action with regard to the September 21 request accrued in October 1977, over 7½ years before he filed suit, and the statute of limitations was not tolled (if at all) for anywhere near 1½ years, we hold that this cause of action is time barred.[10]

\* \* \* \* \* \*

As appellant himself has observed, little is at stake in all this. Appellant can simply refile his FOIA request tomorrow and restart the process. In fact, so far as we can tell, nothing prevents him from requesting the same withheld documents decade after decade without ever bringing a timely suit to compel disclosure. With the hope that appellant will not unduly clog the docket of an agency that has until now apparently attempted to pursue its responsibilities diligently, we affirm the District Court's judgment.

*So ordered.*

---

**10.** We summarily reject appellant's contention that his motion to amend the complaint in the New York lawsuit, *see supra* note 1, tolled the statute of limitations for the 2½ years during which the motion was pending. Even assuming that the FOIA claim was ever a part of that lawsuit, *but see Spannaus,* 643 F.Supp. at 703, its pendency could not have tolled the statute of limitations. "[T]he pendency of an action involuntarily dismissed without prejudice [as here] does not operate to toll the running of the statute of limitations." *Dupree v. Jefferson,* 666

F.2d 606, 611 (D.C.Cir.1981) (footnote omitted), *quoted in Bouchet v. National Urban League, Inc.,* 730 F.2d 799, 807 (D.C.Cir.1984); *see Carter v. Washington Metropolitan Area Transit Authority,* 764 F.2d 854, 856–58 (D.C.Cir.1985). Nor can we read the New York district court's offhand remark—that plaintiff is "free to file a new FOIA action for the ... documents," J.A. at 59—to overrule established law, much less law that it never expressly considered. *See Walters v. Secretary of Defense,* 725 F.2d 107, 112 n. 12 (D.C.Cir.1983).