SENDRA CORPORATION, Appellant

v.

John W. MAGAW, Director, Bureau of Alcohol, Tobacco and Firearms, U.S. Department of the Treasury, Appellee.

No. 95–5307.

United States Court of Appeals, District of Columbia Circuit.

Argued March 14, 1997.

Decided April 22, 1997

Stephen P. Halbrook, Fairfax, VA, argued the cause and filed the briefs for appellant.

Fred E. Haynes, Assistant U.S. Attorney, Washington, DC, argued the cause for appellee. With him on the brief were Eric H. Holder, Jr., U.S. Attorney, Washington, DC, and R. Craig Lawrence, Assistant U.S. Attorney.

Before: SILBERMAN, RANDOLPH, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

This is an appeal from the district court's judgment rejecting Sendra Corporation's challenge to a decision of the Bureau of Alcohol, Tobacco and Firearms. Procedural principles of administrative law lead us to affirm the judgment for reasons different than those given by the district court.

I

Sendra Corporation, an Illinois company, manufactures firearms. At one time, it made machineguns. The National Firearms Act regulates the manufacture of machineguns. The statute defines "machinegun" to mean "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). The "frame or receiver" of such a weapon is also a "machinegun." *Id.* Regulations define "frame or receiver" to mean the "part of a firearm which provides housing for the hammer, bolt or breechblock and firing mechanism, and which is usually threaded at its forward position to receive the barrel." 27 C.F.R. § 179.11.

In amendments to the Gun Control Act, Congress banned private possession and transfer of machineguns manufactured after May 19, 1986. 18 U.S.C. § 922(*o*)(2)(B). Regulations issued under the National Firearms Act require manufacturers to file with the Bureau a notice showing, for each firearm, the date of its manufacture, its type, model, gauge or size, and serial number. 27 C.F.R. § 179.103. In anticipation of the 1986 Gun Control Act amendments, "manufacturers seeking to register machineguns prior to the cutoff date flooded the Bureau with applications." *F.J. Vollmer Co. v. Higgins*, 23 F.3d 448, 450 (D.C.Cir.1994).

Between April 24, 1986, and May 14, 1986, Sendra submitted registration applications to the Bureau for 3,119 machineguns, consisting of seven different models. The Bureau inspected Sendra's premises to determine whether the firearms reported by Sendra had actually been manufactured. The Bureau took samples of Sendra's receivers. In a letter of August 11, 1987, the Bureau informed Sendra that it would not register the 3,119 items because they "were not in a stage of the manufacturing process whereby they

were National Firearms Act firearms as defined in 26 USC, Section 5845(b)." Letter from Terry L. Cates, Chief, National Firearms Act Branch, to Cynthia E. Aleo, Secretary for Sendra Corp. 1 (Aug. 11, 1987).

Sendra objected to the Bureau's decision regarding some of these items and requested an informal conference with the Chief of the Bureau's National Firearms Act Branch so that it could "explain the facts and circumstances more fully." Letter from Stephen P. Halbrook, Attorney for Sendra Corp., to Wayne Miller, Chief, National Firearms Act Branch 1 (Aug. 23, 1990). On October 3, 1990, the Bureau responded, stating that "our position regarding these items continues to be that they are not" machineguns "and are not registrable." Letter from Evans W. Miller, Chief, National Firearms Act Branch, to Stephen P. Halbrook, Attorney for Sendra Corp. 2 (Oct. 3, 1990). The letter continued: "As for your request that" the Bureau "reexamine" specific machinegun models "on Sendra's premises, we do not believe that a further inspection would be fruitful. Assuming that a current inspection would indicate that these items are [machineguns], such a finding would not establish that they were in the same condition when the applications to register them were filed. Accordingly, we do not intend to conduct a reinspection at this late date." *Id.* If Sendra wished "to present additional facts or arguments," it should do so in writing. *Id.* A conference, the Bureau's letter concluded, was "unnecessary." *Id.*

On November 30, 1990, Sendra submitted a memorandum and exhibits to the Bureau "in further support of" its "request that the firearms in question be registered." Letter from Stephen P. Halbrook to Evans W. Miller 1 (Nov. 30, 1990). In a letter of April 19, 1991, Sendra repeated its "request" that the Bureau "register these machineguns as having been manufactured before May 19, 1986," and "approve the enclosed applications and any further transfer applications Sendra submits for the machineguns in question." Letter from Stephen P. Halbrook to Evans W.

Miller 1 (Apr. 19, 1991). With this letter, Sendra enclosed documents and a supplemental memorandum explaining that its delay was caused by its decision to wait until the conclusion of the criminal prosecution of some of Sendra's former officers for violation of the Gun Control Act.[1]

The Bureau responded on October 2, 1991. After restating the reasons for its 1987 decision not to register the items as machineguns, the Bureau concluded: "In view of these circumstances and since over five years have elapsed, we are not willing to accept these receivers for registration prior to May 19, 1986." Letter from Wayne Miller to Stephen P. Halbrook 2 (Oct. 2, 1991).

For reasons that do not appear in the record, the Bureau nevertheless conducted another inspection of Sendra's facilities on December 16, 1991. On May 8, 1992, the Bureau wrote to Sendra:

> By letter dated October 3, 1990, we again advised you that these items were not registrable as [machineguns] prior to May 19, 1986. We also advised that we would not reexamine several of the items, since, assuming that they are now complete [machineguns], this would not establish that they were in the same condition when [Sendra applied for registration] in 1986.
>
> As you are aware, your request for ATF to reexamine the alleged machineguns at Sendra's premises was recently granted. On December 16, 1991, ATF personnel visited Sendra's premises in Barrington, Illinois, for this purpose. This letter will discuss the results of the examination as well as a number of points raised in your recent correspondence concerning this matter.

Letter from Wayne Miller to Stephen P. Halbrook 2 (May 8, 1992). The letter went on to describe why the Bureau decided as it did in 1987 and explained why newly-presented evidence from Sendra was not credible. Two receiver models—the M60 and the

---

1. The criminal activities, which occurred contemporaneously with the denial of registration, do not appear to involve the weapons at issue here. *See generally United States v. Drasen,* 665 F.Supp. 598, 604–05 (N.D.Ill.1987) (criminal prosecution), *rev'd in part,* 845 F.2d 731 (7th Cir.1988).

XM15E2—were clearly registrable as of December 16, 1991, but the Bureau had "insufficient evidence from which to conclude that Sendra was in possession of" completed receivers "on May 19, 1986." *Id.* at 4; *accord id.* at 7–8. As to the third model—the STEN—the Bureau reiterated its earlier decision, denying registration on the basis that an individual in the Sendra factory told investigators in 1986 that the STEN receivers were to be used for semi-automatic weapons, not machineguns. *Id.* at 3. Therefore, the Bureau allowed the receivers to "be finished as semiautomatic firearms and sold as weapons not subject to the" National Firearms Act, but if "these items are further machined and finished as machinegun receivers," the Bureau said it would deny registration. *Id.* For the M60 receivers, the Bureau stated that if Sendra were "to submit additional documentary evidence indicating that all of the parts necessary to assemble complete M60 receivers were on the premises on May 19, 1986," it would "reconsider the above decision." *Id.* at 4. The Bureau concluded:

> Finally, we would point out that Sendra's delay in requesting ATF's reconsideration of this matter has made it extremely difficult to determine the validity of the arguments made on their behalf. . . .
>
> . . . The fact that ATF complied with your request to reexamine the items on Sendra's premises demonstrates that ATF has considered the arguments made on Sendra's behalf and has dealt fairly with your client. ATF's disapproval of the registrations is based on the fact that there is insufficient evidence from which to conclude that the items were at a state of manufacture as of May 19, 1986, as to be subject to the [National Firearms Act].

*Id.* at 8.

In response, Sendra submitted numerous affidavits stating that the receivers were manufactured prior to May 19, 1986. Sendra also asserted that the STEN "has been a fully operable machinegun from its inception" and sent a videotape demonstrating a "STEN submachinegun" in action. Letter from Stephen P. Halbrook to Wayne Miller (Oct. 6, 1992). In the final letter between the Bureau and Sendra, the Bureau denied re-

consideration. The Bureau wrote that Sendra's affidavits were not "persuasive evidence that the 'firearms' at issue were in fact manufactured prior to May 19, 1986. Accordingly, we must again decline your request to register the items as machineguns which were manufactured prior to May 19, 1986." Letter from Wayne Miller to Stephen P. Halbrook (Aug. 17, 1993). Thus ended the administrative phase of this case.

On April 28, 1994, Sendra filed suit in the district court seeking, pursuant to 5 U.S.C. § 702 and 28 U.S.C. §§ 1361 & 2201, a declaratory judgment and a writ of mandamus to compel the Bureau to register the receivers. In its answer to the complaint, the government raised the defense of the statute of limitations, 28 U.S.C. § 2401(a), arguing that the suit was brought more than six years after Sendra's claim first accrued. The government moved for summary judgment on the statute of limitations grounds. The district court denied the motion, finding that the Bureau's "August 11, 1987 decision, though perhaps 'final' at the time, was ultimately rendered nonfinal," and that "the 1993 agency decision is reviewable as a reopened, final agency action filed within the statutory period." Memorandum Opinion at 11 (Nov. 1, 1994). Thereafter, on cross-motions for summary judgment, the district court ruled in favor of the Bureau on the merits.

II

■ First points. We are dealing here with informal agency adjudication. No statute required the Bureau to reach its decision only after holding a hearing on the record. *See* 5 U.S.C. § 554. Nonetheless, the Administrative Procedure Act subjects "final agency action" of this sort to judicial review. 5 U.S.C. § 704. Unless another statute provides otherwise (there is no other statute here), judicial review of such agency actions is barred unless the suit is commenced "within six years after the right of action first accrued." 28 U.S.C. § 2401. The right of action first accrues on the date of final agency action. *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 56 (D.C.Cir.1987).

Sendra's right of action first accrued in 1987, when the Bureau refused to register the receivers. But Sendra did not file this action until 1994, more than six years later. In the interim it asked the Bureau four times—in August 1990, in November 1990, in April 1991, and in October 1992—to reconsider the agency's initial registration decision.

Second points. Agency action is final "whether or not there has been presented or determined an application for ... any form of reconsideration." 5 U.S.C. § 704. Parties therefore do not have to seek rehearing before they commence an action for judicial review, unless there is a statute requiring them to do so (there is none here). *Interstate Commerce Comm'n v. Brotherhood of Locomotive Engineers*, 482 U.S. 270, 284, 107 S.Ct. 2360, 2368–69, 96 L.Ed.2d 222 (1987); *cf. Darby v. Cisneros*, 509 U.S. 137, 144–47, 113 S.Ct. 2539, 2543–45, 125 L.Ed.2d 113 (1993). But in formal APA adjudications, if a party does file a *timely* request for reconsideration, this tolls the running of the period of limitations; until the agency disposes of the request, the original agency decision remains "nonfinal." *Brotherhood of Locomotive Engineers*, 482 U.S. at 285, 107 S.Ct. at 2369.

Whether, in regard to informal adjudications, the limitations period is also tolled when a party timely seeks reconsideration is a question not before us. *See Spannaus*, 824 F.2d at 60; *cf. Impro Products, Inc. v. Block*, 722 F.2d 845, 850–51 (D.C.Cir.1983). Sendra has expressly disclaimed any challenge to the Bureau's 1987 decision. Therefore it is of no moment whether Sendra's 1994 suit was timely with respect to that decision. The only "final agency action" Sendra identifies is the Bureau's letter of August 18, 1993, declining for the fourth time since 1987 to register the receivers as machineguns. If the 1993 letter is reviewable as final agency action, Sendra's suit was timely filed.

Third points. Assume for the moment that the Bureau's 1993 letter represents only the Bureau's refusal to reconsider its earlier decision. An agency's denial of a petition, or a request, for reconsideration is not itself subject to judicial review if the petition alleges only "material error" in the agency's original decision. *Brotherhood of Locomotive Engineers*, 482 U.S. at 279, 107 S.Ct. at 2366. For formal adjudication, judicial review of such a denial would serve no useful purpose because the complaining party could still seek review of the original order, the period of limitations having been tolled. *Id.* Furthermore, an agency's denial of such a request for reconsideration is, under 5 U.S.C. § 701(a)(2), "committed to agency discretion by law." *Brotherhood of Locomotive Engineers*, 482 U.S. at 282, 107 S.Ct. at 2367 (citing *Heckler v. Chaney*, 470 U.S. 821, 832, 105 S.Ct. 1649, 1656, 84 L.Ed.2d 714 (1985)). "This rule is familiar from other contexts. If a judicial panel or an *en banc* court denies rehearing, no one supposes that that denial, as opposed to the panel opinion, is an appealable action...." *Brotherhood of Locomotive Engineers*, 482 U.S. at 280, 107 S.Ct. at 2366. On the other hand, if an agency denies a petition for reconsideration alleging "new evidence" or "changed circumstances," the agency's denial is reviewable as a final agency action; but it will be set aside only for the "clearest abuse of discretion." *Id.* at 278, 107 S.Ct. at 2365 (quoting *United States v. Pierce Auto Freight Lines, Inc.*, 327 U.S. 515, 534–35, 66 S.Ct. 687, 697–98, 90 L.Ed. 821 (1946)).

Here, Sendra alleged no changed circumstances. And it did not, in any of its requests for reconsideration, allege new evidence of the sort the Supreme Court had in mind in *Brotherhood of Locomotive Engineers*—namely, "facts which, through no fault of [the petitioner], the original proceeding did not contain." *Brotherhood of Locomotive Engineers*, 482 U.S. at 279, 107 S.Ct. at 2366. The information Sendra supplied to the Bureau after 1987 was available before the Bureau first acted. It was evidence within Sendra's control. And Sendra could have presented it before the Bureau reached its initial decision. *Cf. United Mine Workers of Am.1974 Pension v. Pittston Co.*, 984 F.2d 469, 476–77 (D.C.Cir.1993); *National Anti–Hunger Coalition v. Executive Comm. of the President's Private Sector Survey on Cost Control*, 711 F.2d 1071, 1075 n. 3 (D.C.Cir. 1983). Furthermore, the Bureau's 1993 letter—a letter Sendra considers final agency action—constituted the Bureau's fourth re-

fusal to reconsider its 1987 decision. While an agency's first refusal to grant reconsideration may be reviewable in limited circumstances, its denials of successive requests for reconsideration of the same decision are not. Whether an agency should even respond to such entreaties is "committed to agency discretion by law," and therefore not subject to judicial review. 5 U.S.C. § 701(a)(2).

Fourth. If for any reason the agency reopens a matter and, after reconsideration, issues a new and final order, that order is reviewable on its merits, even though the agency merely reaffirms its original decision. *Brotherhood of Locomotive Engineers*, 482 U.S. at 278, 107 S.Ct. at 2365–66; *Poulin v. Bowen*, 817 F.2d 865, 869 (D.C.Cir.1987); *National Rifle Ass'n of Am. v. FEC*, 854 F.2d 1330, 1336 (D.C.Cir.1988). The new order is, in other words, final agency action and as such, a new right of action accrues and starts the running of a new limitations period for judicial review.

Thus, if the Bureau's 1993 letter represented its decision after reopening the proceedings, Sendra is entitled to judicial review of that decision.

■ Fifth and final points. That the agency discusses the merits at length when it denies a request for reconsideration does not necessarily mean the agency has reopened the proceedings. *Brotherhood of Locomotive Engineers*, 482 U.S. at 280–81, 107 S.Ct. at 2366–67. For formal agency adjudications, an agency order stating only that it is denying reconsideration is conclusive, so long as the agency has not altered its original decision. Courts will not, in other words, look behind the agency's formal disposition of the reconsideration request to see whether the agency "in fact" reopened its original decision (and thus rendered a new final order). *Id.* There is a corollary to this rule. Only "when the agency has clearly stated or otherwise demonstrated," that it has reopened the proceeding will the resulting agency decision be considered a new final order subject to judicial review under the usual standards. *Morris v. Sullivan*, 897 F.2d 553, 558 (D.C.Cir.1990); *see Cappadora v. Celebrezze*, 356 F.2d 1, 4–5 (2d Cir.1966) (Friendly, J.). These principles of administrative law have no less force in informal adjudications. In both formal and informal adjudications, the agency must accompany its denial "of a written application, petition, or other request of an interested person" with "a brief statement of the grounds for denial," except when the denial is "self-explanatory." 5 U.S.C. § 555(e); *see* UNITED STATES DEPARTMENT OF JUSTICE, ATTORNEY GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT 70 (1947), *reprinted in* ADMINISTRATIVE CONFERENCE OF THE UNITED STATES, FEDERAL ADMINISTRATIVE PROCEDURE SOURCEBOOK 67, 136 (2d ed.1992). But when the agency is merely "affirming a prior denial," no explanation is required, 5 U.S.C. § 555(e), and none is normally given. *See Brotherhood of Locomotive Engineers*, 482 U.S. at 283, 107 S.Ct. at 2368. It would make no sense whatsoever to hold that when an agency offers an explanation for "affirming a prior denial," ithas in effect reopened the proceedings and rendered a new,judicially-reviewable decision. *See id.* at 281, 107 S.Ct. at 2367; *Morris*, 897 F.2d at 559. Thus, unless the agency clearly states or indicates that it has reopened the matter, its refusal of a request for reconsideration will be treated as simply that. *See id.*

■ Here, the Bureau's 1993 one-page letter to Sendra did not expressly say that it had reopened the matter and we detect nothing in the letter to indicate that it had done so. The Bureau examined the affidavits Sendra submitted, but did "not find any of the statements to be persuasive evidence that the 'firearms' at issue were in fact manufactured prior to May 19, 1986." Letter from Wayne Miller to Stephen P. Halbrook (Aug. 17, 1993). "Accordingly," the Bureau continued, "we must again decline your request to register the items as machineguns which were manufactured prior to May 19, 1986." *Id.* Under *Morris*, the Bureau's letter constituted nothing more than a statement of the reasons why Sendra's request did not warrant reopening the matter. *Morris*, 897 F.2d at 557 n. 8. The 1993 letter, in other words, denied for the fourth time Sendra's request for reconsideration and, as such, it was not subject to judicial review.

*Affirmed.*