# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 20, 2016      Decided November 15, 2016

No. 15-1297

UNITED STATES POSTAL SERVICE,
PETITIONER

v.

POSTAL REGULATORY COMMISSION,
RESPONDENT

ALLIANCE OF NONPROFIT MAILERS, ET AL.,
INTERVENORS

———

On Petition for Review of an Order
of the Postal Regulatory Commission

———

*David C. Belt*, Attorney, United States Postal Service, argued the cause and filed briefs for the petitioner. *Stephan J. Boardman*, Chief Counsel, United States Postal Service, entered an appearance.

*Daniel Tenny*, Attorney, United States Department of Justice, argued the cause for the respondent. *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Michael S. Raab*, Attorney, *David A. Trissell*, General Counsel, Postal Regulatory Commission, *Christopher J. Laver* and *Anne J. Siarnacki*, Deputy General Counsels and *Elisabeth S. Shellan*, Attorney were with him on brief.

*David M. Levy*, *Matthew D. Field*, *Ian D. Volner*, *Jeremiah L. Morgan* and *William J. Olson* were on brief for the mailer intervenors in support of the Postal Regulatory Commission.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Postal Accountability and Enhancement Act of 2006 authorizes the Postal Regulatory Commission (Commission) to regulate the rates of the United States Postal Service's (Postal Service) market-dominant products. *See* 39 U.S.C. §§ 3621–29. Although annual price increases for these products are generally capped at the rate of inflation, the Commission is permitted to approve raising rates above this mark "on an expedited basis due to either extraordinary or exceptional circumstances." *Id.* § 3622(d)(1)(E). In Order No. 1926,[1] the Commission—recognizing that the Great Recession of 2008 was just such an exigent circumstance—allowed for a rate increase but also sought to calculate the extent to which decreased mail volume was "due to" the economic downturn in order to determine how long that rate increase should remain in effect. As part of its inquiry, the Commission created a "new normal" test to determine when the "extraordinary or exceptional circumstances" no longer supported a rate increase. In an earlier case, the Postal Service had petitioned this Court for review of that "new normal" test and we upheld

---

[1] Postal Regulatory Commission, Order Granting Exigent Price Increase, Order No. 1926, Docket No. R2013–11 (December 24, 2013) (Order No. 1926).

the Commission's approach as "well reasoned and grounded in the evidence before the Commission . . . [and] comfortably pass[ing] deferential APA review." *All. of Nonprofit Mailers v. Postal Regulatory Comm'n*, 790 F.3d 186, 196 (D.C. Cir. 2015). The Postal Service sought reconsideration, claiming that the Commission "altered its original decision" by "changing the meaning and role of the 'ability to adjust' element of its ['new normal'] test," Pet'r Reply Br. 7, and, in Order No. 2623,[2] the Commission denied that request. Because the Commission's denial of reconsideration is unreviewable, we dismiss the Postal Service's petition for lack of jurisdiction. *Entravision Holdings, LLC v. FCC*, 202 F.3d 311, 313 n.2 (D.C. Cir. 2000).

I.

In enacting the Postal Accountability and Enhancement Act of 2006 (the Act), Pub. L. No. 109–435, 120 Stat. 3198, the Congress directed the Commission to establish a modern system for regulating the rates and classes of the Postal Service's market-dominant products. *See* 39 U.S.C. §§ 3621–29. Although the Act affords the Commission some flexibility in carrying out its charge, *see id.* § 3622 (authorizing Commission to create "modern system for regulating rates" but also mandating that Commission account for certain "factors," "objectives" and "requirements" in so doing), the Congress set forth a price cap for market-dominant products, generally limiting each price increase to an amount equal to the annual change in the Consumer Price Index for All Urban Consumers (CPI-U). *See id.* § 3622(d)(1)(A). The Act also provides "procedures whereby rates may be adjusted on an expedited basis due to either extraordinary or exceptional circumstances"

---

[2] Postal Regulatory Commission, Order Resolving Issues on Remand, Order No. 2623, Docket No. R2013–11R (July 29, 2015) (Order No. 2623).

without regard to the CPI-U limitation. *Id.* § 3622(d)(1)(E). Specifically, for this statutory "safety valve" to take effect, the Commission must find

> after notice and opportunity for a public hearing and comment, and within 90 days after any request by the Postal Service, that such adjustment is reasonable and equitable and necessary to enable the Postal Service, under best practices of honest, efficient, and economical management, to maintain and continue the development of postal services of the kind and quality adapted to the needs of the United States.

*Id.*

The Postal Service first requested an above-CPI-U rate increase in July 2010 as it sought to make up for substantial losses resulting from the "dramatic, rapid and unprecedented decline in mail volume" caused by the Great Recession. *See U.S. Postal Serv. v. Postal Regulatory Comm'n*, 640 F.3d 1263, 1265 (D.C. Cir. 2011) (internal quotation marks omitted). Although the Commission agreed that "the recent recession, and the decline in mail volume experienced during the recession" qualified as an "extraordinary or exceptional circumstance," it nonetheless denied the Postal Service's request for an above-CPI-U rate increase because it found that the Postal Service had failed to quantify properly its losses "due to" the recession with particularity. *See* Postal Regulatory Commission, Order Denying Request for Exigent Rate Adjustments, Order No. 547, Docket No. R2010–4, at 3-4 (Sept. 30, 2010). This Court disagreed with the latter portion of the Commission's analysis, finding that, although "the plain meaning of 'due to' mandates a causal relationship between the

amount of a requested adjustment and the exigent circumstances' impact on the Postal Service," the Act is ambiguous as to "how close the relationship must be." 640 F.3d at 1267–68. We remanded the case to the Commission to fill that statutory gap, which it did in Order No. 864. *See* Postal Regulatory Commission, Order Resolving Issues on Remand, Order No. 864, Dkt. No. R2010-4R, at 25 (Sept. 20, 2011) (noting that "exigent rate adjustments are permitted only if, and to the extent that, they compensate for the net adverse financial impact of the exigent circumstances").

In September 2013, the Postal Service renewed its request for an above-CPI-U rate increase, seeking a 4.3% price hike for an indefinite period of time. In Order No. 1926, the Commission granted the Postal Service's request in part. Order No. 1926, Docket No. R2013–11. The Commission reaffirmed that the Great Recession constituted an exigent circumstance warranting a rate increase but it still disagreed with the Postal Service on the extent to which mail volume losses had been caused by the economic downturn. *See id.* at 44. Thus, the Commission allowed the 4.3% above-CPI-U rate increase to remain in effect for only so long as necessary for the Postal Service to recover $2.8 billion. *Id.* at 181.

The rationale underlying the Commission's decision in Order No. 1926 was twofold. First, the Commission determined that mail volume losses could not be considered "due to" the economic downturn once a "new normal" in operational levels was achieved. *See id.* at 83–94. The related "new normal" test, in turn, examined four factors:

> (1) the disruption to a sufficient number of relevant macroeconomic indicators demonstrate[d] a return to near historic positive trends; (2) application of the macroeconomic

> variables accurately project[ed] change, and the rate of change on Postal Service mail volumes is positive; (3) the Postal Service regain[ed] its ability to predict or project mail volumes following an extraordinary or exceptional event; and (4) the Postal Service *demonstrate[d] an ability to adjust* operations to the lower volumes.

*Id.* at 86 (emphasis added). Second, the Commission implemented a "count once" rule in calculating mail volume losses, meaning that the Commission counted decreased mail volume only in the first year it occurred—in "subsequent years, the Postal Service [was] aware of that loss" and thus able to adjust to account for the same. *Id.* at 96.

Entering the fray once more, this Court reviewed the Postal Service's challenge to Order No. 1926 in *Alliance of Nonprofit Mailers v. Postal Regulatory Commission*, 790 F.3d at 189. We held that the Commission's "new normal" test was "well reasoned and grounded in the evidence before the Commission . . . comfortably pass[ing] deferential APA review." *Id.* at 196. "In other words, the Commission permissibly reasoned that just because some of the effects of exigent circumstances may continue for the foreseeable future, that does not mean that those circumstances remain 'extraordinary' or 'exceptional' for just as long." *Id.* at 194. We found the logic of the Commission's "count once" rule, however, difficult to reconcile with its explanation of the "new normal" test. *See id.* at 195–96. We therefore vacated the portion of Order No. 1926 setting out the "count once" rule. *Id.* Finally, the Court in a footnote mentioned an additional argument, reciting that "[a]t oral argument, counsel for the Postal Service argued that the 'new normal' analysis in the Order is also inconsistent with the Commission's analysis of

whether the rate increase was 'necessary'" within the meaning of 39 U.S.C. § 3622(d)(1)(E).[3] *Id.* at 196 n.3. Because the argument had not been briefed, we concluded that it was not properly before the Court, at the same time noting that the Commission was "free to consider that argument on remand." *Id.*

On remand from Order No. 1926, the Commission removed the vacated "count once" rule, replacing it with a cumulative counting system for determining lost mail volume. Order No. 2623, Docket No. R2013–11R, at 28–46. Although the Postal Service had encouraged the Commission to "accept the court's invitation" to reconsider the "new normal" test and reconcile a perceived inconsistency between Parts IV and V of Order No. 1926,[4] the Commission rejected the invitation, declaring that it "decline[d] to revise the 'new normal' analysis of Order No. 1926 . . . ." Order No. 2623, Docket No. R2013–11R, at 23. The Commission elaborated that, notwithstanding its "discretion to reopen its decisions, an exercise of that

---

[3] Whether a rate increase is "necessary" is the final inquiry the Commission undertakes before approving an above-CPI-U rate increase. *See* 39 U.S.C. § 3622(d)(1)(E); *All. of Nonprofit Mailers*, 790 F.3d at 194 ("The 'reasonable and equitable and necessary' test . . . applies only after exigent causation for a loss has been established and turns on the Postal Service's current need to get back on its feet in the wake of the now-defined exigency."). Focusing on recovery rather than causation, the "necessary" inquiry asks whether the Postal Service requires increased rates in order "to maintain and continue the development of postal services of the kind and quality adapted to the needs of the United States," 39 U.S.C. § 3662(d)(1)(E), in light of the exigent circumstance's effect on the marketplace. *All. of Nonprofit Mailers*, 790 F.3d at 194.

[4] *See* United States Postal Service, Initial Comments of the United States Postal Service in Response to Commission Order No. 2540, Docket No. R2013-11R, at 7 (June 26, 2015).

discretion is not warranted here given the interest in finality and the lack of any newly available evidence that would justify raising the issue at this late stage." *Id.* at 24.

The Postal Service again petitioned this Court for review.

## II.

Under *ICC v. Brotherhood of Locomotive Engineers*, 482 U.S. 270, 280 (1987), an agency's decision to deny reconsideration of an earlier order is unreviewable, except insofar as the request for reconsideration is based upon new evidence or changed circumstances. *Entravision Holdings, LLC*, 202 F.3d at 313; *accord Sendra Corp. v. Magaw*, 111 F.3d 162, 167 (D.C. Cir. 1997) ("[A]n agency order stating only that it is denying reconsideration is conclusive, so long as the agency has not altered its original decision."). The new evidence or changed circumstances exceptions exist because otherwise "the petitioner will have been deprived of all opportunity for judicial consideration . . . of facts which, through no fault of his own, the original proceeding did not contain." *Bhd. of Locomotive Engineers*, 482 U.S. at 279. Nevertheless, even if new evidence or changed circumstances exist, "overturning the refusal to reopen requires a showing of the clearest abuse of discretion." *Id.* at 278 (internal quotation marks omitted).

The Postal Service distinguishes *Brotherhood of Locomotive Engineers*, arguing that the Commission changed both the meaning and the role of the "ability to adjust" inquiry—the fourth element of Order No. 1926's "new normal" test[5]—in Order No. 2623. We disagree. Order No. 2623 plainly states that the "Commission declines to revisit the 'new normal' analysis in Order No. 1926 that was affirmed by

---

[5] *Supra* at 5–6.

the [*Alliance of Nonprofit Mailers*] Court." Order No. 2623, Docket No. R2013–11R, at 23. Order No. 2623 contains no departure from Order No. 1926; rather, it explains its reasoning in denying reconsideration. In fact, Order No. 2623 adopts wholesale the earlier order's findings and conclusion under the "new normal" test. JA 579–84. Simply discussing the merits of an earlier agency decision does not open a reconsideration denial to review. *Bhd. of Locomotive Engineers*, 482 U.S. at 280–81 ("It would hardly be sensible to say that the [agency] can genuinely deny reconsideration only when it gives the matter no thought."). As our Court has recognized:

> That the agency discusses the merits at length when it denies a request for reconsideration does not necessarily mean the agency has reopened the proceedings . . . . It would make no sense whatsoever to hold that when an agency offers an explanation for "affirming a prior denial," it has in effect reopened the proceedings and rendered a new, judicially-reviewable decision.

*Fort Sumter Tours, Inc. v. Babbitt*, 202 F.3d 349, 356 (D.C. Cir. 2000) (internal quotation marks omitted). According to the Postal Service, however, we should read between the lines of the Commission's analysis, inferring substantive change behind the façade of a denial of reconsideration. Pet'r Br. 29–34. Although we note Order No. 2623's less than seamless language, the Commission's ultimate disposition is nonetheless clear: it declined to reconsider the "new normal" test as set forth in Order No. 1926.[6] *See Bhd. of Locomotive*

---

[6] Because we do not agree with the Postal Service's claim that Order No. 2623 dilutes the "ability to adjust" prong of the "new normal" test to such an extent that it reads that prong out, *see* Pet'r

*Engineers*, 482 U.S. at 280–81 ("[I]t is the Commission's formal action, rather than its discussion, that is dispositive.").[7]

The closest the Postal Service came to mounting a "new evidence" challenge appears on page 45 of its opening brief, where it cited the Commission's Financial Analysis Report for 2013 to explain why it would not be too late for the Commission to "revisit the inconsistencies in [its] 'ability to adjust' findings." Pet'r Br. 45. The Postal Service did not, however, finish that thought by asking us to find that the Commission's refusal to reopen Order No. 1926 was an abuse of discretion—whether on the new evidence ground or otherwise. In fact, on pages 3–5 of its reply brief, the Postal Service *rejected* the notion that it was challenging the Commission's "deni[al]" of its "request for reconsideration of" Order No. 1926—or "the four-part test" introduced in that Order—or even the Order's "findings" based on that test. Pet'r Reply Br. 3–5. It assured us that it did not rely on *Sendra Corp.* and *Locomotive Engineers*, precisely because both cases dealt with refusals to reconsider. *Id.* And it distinguished the challenges in those cases from its claim that Order No. 2623 "altered" the Commission's earlier decision. *Id.* The alteration, the brief drove home, "is what the Postal Service now challenges." *Id.* at 5. We conclude, then, that the Postal Service did not rely on the "new evidence" exception and that

---

Reply Br. 16–19, we offer no opinion on the validity of that reading of the "new normal" test.

[7] Counsel for the Postal Service conceded at oral argument that *Alliance of Nonprofit Mailers*'s footnote discussed earlier, *supra* at 6–7, did not order the Commission to reconsider its "new normal" test. Oral Arg. Tr. at 4–5.

challenge is therefore forfeited. *Nat'l Oilseed Processors Ass'n v. OSHA*, 769 F.3d 1173, 1182 (D.C. Cir. 2014).[8]

For the foregoing reasons, the Postal Service's petition for review is dismissed for lack of jurisdiction.

*So ordered.*

---

[8] Had the Postal Service's brief expressly articulated that reconsideration of the "new normal" test was mandated by new evidence in the form of the Commission's Financial Analysis Report for 2013 (Financial Report), we nonetheless would have denied (but not dismissed) the petition. As noted earlier, *Brotherhood of Locomotive Engineers* instructs that "overturning the refusal to reopen requires a showing of the clearest abuse of discretion," *Bhd. of Locomotive Engineers*, 482 U.S. at 278–79 (internal quotation marks omitted), and the Postal Service's claim would fall far short of that standard. Although the Financial Report appeared three months *after* Order No. 1926 issued, it contained no new evidence that materially differed from the evidence used by the Commission in issuing its then-recent Order No. 1926.